**Virginia A. GLYNN, Appellee,**

v.

**Percy N. GLYNN, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 5, 2001.

Filed Dec. 17, 2001.

Douglas P. France, York, for appellant.

Andrew B. Brown, York, for appellee.

Before: DEL SOLE, President Judge, McEWEN, President Judge Emeritus, JOHNSON, FORD ELLIOTT, EAKIN, JOYCE, STEVENS, MUSMANNO and ORIE MELVIN, JJ.

MUSMANNO, J.:

¶ 1 Appellant Percy N. Glynn ("Percy") appeals from an Order finding him in contempt of a prior Order, in which the trial court directed that a property settlement agreement be enforced. We affirm.

¶ 2 Percy and Virginia A. Glynn ("Virginia") were married on February 18, 1989. They had no children. Percy filed a Complaint for divorce on February 18, 1994. On January 7, 1995, the parties entered into a property settlement agreement ("agreement"). The agreement was incorporated but not merged into the divorce Decree, which was entered on February 28, 1995. Under the terms of the agreement, Percy was to pay Virginia $6,000 per month in alimony from January 15, 1995 to

September 15, 1999, with a final payment of $5,138.05 on October 15, 1999.[1]

¶ 3 On November 14, 1995, Virginia filed a Petition for special relief, requesting enforcement of various provisions of the agreement, including the alimony provision. On December 7, 1995, Percy filed a Petition for relief in federal bankruptcy court. After the automatic stay in bankruptcy was lifted, the trial court held a hearing on Virginia's Petition.[2]

¶ 4 On May 6, 1997, the trial court ordered Percy to make alimony payments to Virginia for October and November, 1995, and entered a civil judgment of $12,960.00 plus interest in Virginia's favor. The trial court directed that Percy's wages be attached at the rate of $500.00 per month to enforce and collect the judgment. The trial court also ordered Percy to pay Virginia $850.00 in attorneys' fees and $36.11 in costs.

¶ 5 On November 13, 1997, Virginia filed a Petition for enforcement and contempt of the trial court's May 6, 1997 Order. On September 10, 1998, the trial court found Percy in contempt of the May 6, 1997 Order, "sentenced" Percy to one year of probation, and ordered him to comply with the following conditions: (1) pay $500 per month to Virginia on account of the alimony owed her; (2) pay Virginia's attorneys' fees of $850.00 and $36.11 in costs with interest of 6 percent "within 30 days;" (3) pay tax levies and costs assessed against Virginia "within 120 days;" (4) report in writing on a monthly basis to the Domestic Relations Office a verified statement of income, the source of that income, and the name of his employer or any person or entity for which Percy had consulted or performed services, with a copy of such to Virginia; and (5) provide the Domestic Relations Office with written notice of any change in status with regard to employment, residence, and/or mailing address within 7 days of the change in status. Order, 9/10/98. Percy filed a timely appeal to this Court from the September 10, 1998 Order.[3]

¶ 6 Subsequently, on October 29, 1998, Virginia filed a Petition for contempt, alleging that Percy had failed to comply with the trial court's September 10, 1998 Order.[4] On May 30, 2000, after several hearings, the trial court issued an Order, finding Percy in contempt of the September 10, 1998 Order in several respects.

1. The agreement had numerous provisions other than the alimony provisions. One of those provisions was that Perry would execute and deliver a judgment note to Virginia, in the amount of $349,138.05, and execute an "Assignment of Receipts of Lancaster Oil, Inc. proceeds" as security for the payment of alimony. *See Glynn v. Glynn,* 747 A.2d 424 (Pa.Super.1999) (unpublished memorandum).

2. In May 1996, Lancaster Oil Company filed for Chapter 11 (United States Bankruptcy Code) bankruptcy. Virginia filed a proof of claim as a secured creditor under the "Assignment" portion of the property settlement agreement. Virginia and the trustee in Perry's bankruptcy action negotiated a settlement of $50,000.00 with the oil company, to be divided equally between Virginia and Percy. *See Glynn,* 747 A.2d 424 (No. 1523 Hbg. 1998, filed September 30, 1999), slip op. at 2–3.

3. On September 30, 1999, this Court affirmed the trial court's September 10, 1998 Order. *See Glynn,* 747 A.2d 424.

4. Although an appeal of the September 10, 1998 Order was pending at that time, pursuant to Pa.R.A.P. 1701(b)(2), the authority of a trial court after an appeal has been taken includes the authority to "(e)nforce any order entered in the matter ...." Pa.R.A.P. 1701(b)(2); *Tanglwood Lakes Community Ass'n v. Laskowski,* 420 Pa.Super. 175, 616 A.2d 37 (1992) (holding that, absent a *supersedeas,* the trial court retains its power to enforce orders even after an appeal has been taken). Percy did not file a *supersedeas.*

First, the trial court found that Percy had failed to pay $500 per month to Virginia for alimony. The trial court sentenced Percy to six months in prison for that failure. The trial court determined that Percy had the ability to make the required payments, and stated that Percy could purge his sentence of incarceration by paying $5,000.00 to Virginia, before June 29, 2000, or by working in the Outmate Program[5] for a period of 90 days.

¶ 7 Second, the trial court found Percy in contempt for failing to pay Virginia's attorneys' fees and costs. The trial court sentenced Percy to six months in prison, and stated that Percy could purge the prison sentence by paying the attorneys' fees and costs ($886.11) plus interest (6%), or by working in the Outmate Program for 90 days.

¶ 8 Third, the trial court found Percy in contempt for failing to report monthly to the Domestic Relations Section, and for failing to provide written notice of a change of residence or mailing address. The trial court sentenced Percy to six months probation for each of those violations. The two six-month probation terms and the two six-month prison terms were to run consecutively to each other.

¶ 9 Percy filed this timely appeal of the May 30, 2000 Order, in which he raises three issues:

1. Whether the trial court erred in establishing a purge amount, and making a finding of a current ability to pay, based on information that was almost a year old at the time of the trial court's decision?

2. Whether the trial court erred in using enforcement provisions for an alimo-

ny order which were not bargained for by the parties?

3. Whether the trial court erred in finding that Percy had willfully disobeyed the order for payment of alimony when Virginia had received $25,000 on behalf of the alimony obligation which has never been credited?

*See* Brief for Appellant at 3.

■ ¶ 10 First, we must determine the appealability of the May 30, 2000 Order. *See Kulp v. Hrivnak,* 765 A.2d 796 (Pa.Super.2000) (holding that it is incumbent upon this Court to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order).

■ ¶ 11 This Court will only consider appeals from final orders of a trial court. Pa.R.A.P. 341(a). An order finding a party in contempt for failure to comply with a prior order of court is final and appealable if sanctions are imposed. *Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155, 159 n. 1, 160 (1988) (*en banc* ); *Lachat v. Hinchliffe,* 769 A.2d 481, 488 (Pa.Super.2001); *Steel v. Weisberg,* 368 Pa.Super. 590, 534 A.2d 814 (1987); *Hester v. Bagnato,* 292 Pa.Super. 322, 437 A.2d 66 (1981).

¶ 12 In the present case, the trial court, on May 30, 2000, found Percy in contempt of the trial court's prior Order, and imposed sanctions on Percy (two six-month prison terms and two six-month probation terms) for his failure to comply with the requirements of the prior Order. Thus, the May 30, 2000 Order appears final and appealable.

¶ 13 Virginia contends, however, that the May 30, 2000 Order was interlocutory because Percy's incarceration had not yet occurred. Virginia relies on *Sargent v. Sargent,* 733 A.2d 640 (Pa.Super.1999), in

---

5. We have adduced from the record that the Outmate Program allows persons who are undergoing a sentence of imprisonment at the York County Prison to work outside of the prison.

support of her position. In *Sargent*, a panel of this Court concluded that the contempt order therein, which found Sargent in contempt for failing to pay child support, and which sentenced him to six months in prison unless he paid $5,538.80 plus fees within thirty days, was an interlocutory order because the sanctions were merely "threatened" and had not been actually imposed. *Sargent*, 733 A.2d at 641.

¶ 14 *Sargent*, however, is in conflict with other cases decided by this Court. For example, in *Sonder*, an *en banc* panel of this Court held that the trial court's order directing husband to pay $29,800 "forthwith" and $1,000 in counsel fees and expenses, was interlocutory "as no sanctions were imposed." *Sonder*, 549 A.2d at 159. Notwithstanding that holding, the Court in *Sonder* also held that a separate order directing husband to pay "$10,000 forthwith or [be] commit[ed] to jail for 90 days," was final and appealable.[6] *Id.* at 166. Clearly, the second order imposed sanctions on husband in the form of a jail sentence. However, the second order also contained a purge condition, *i.e.*, that husband pay $10,000 "forthwith."

¶ 15 Similarly, this Court determined that an order finding the defendant in contempt for failing to comply with an order enforcing a settlement agreement, which gave the defendant an opportunity to purge himself by paying the settlement sum, but which did not impose sanctions on the defendant, was interlocutory and not appealable. *Hester*, 437 A.2d at 66–67; *cf. Lachat*, 769 A.2d at 488 (holding that an order finding the defendant in contempt and requiring him to pay $450 in counsel fees and one-half the cost of a property survey "on or before the 31st day following

this Order" was final and appealable because the order contained both a finding of contempt and a directive to make remedial payment to the plaintiffs for surveyor's fees and attorneys' fees).

¶ 16 In *Steel v. Weisberg*, 368 Pa.Super. 590, 534 A.2d 814 (1987), the trial court entered an order finding defendant in contempt for failing to answer questions at a deposition, as the trial court had previously directed. *Id.* at 815. The trial court also imposed a fine of "$25.00 conditionally" upon defendant. In addition, the trial court directed that defendant could purge himself of the contempt and the necessity to pay the fine "by answering all questions provided to him …." *Id.* at 816. On appeal, this Court found that the order was final and "immediately appealable," even though the trial court had given the defendant a purge condition. Our Court explained as follows:

> Although [defendant] was given the opportunity to remove the sanction, such a feature is typical of civil contempt orders, which must contain conditions on the sentence so as to permit the contemnor to purge himself; he must be allowed to carry the keys to the jail in his pocket. Here, no further order would be necessary before the sanction would become effective. The order is properly before us for review.

*Id.* (citations and quotations omitted).

¶ 17 We find that the above reasoning by this Court in *Steel* is more persuasive than that relied on by the panel in *Sargent*. When a contempt order that imposes sanctions also contains a purge condition, the purge condition does not transform a final, appealable order into one that is interlocutory. If that were so,

---

**6.** This Court in *Sonder* explained that "[t]here is no question [that] this is an appealable Order as a final contempt Order was entered after hearing in compliance with *Crislip* [v.

*Harshman*, 243 Pa.Super. 349, 365 A.2d 1260 (1976)]." *Sonder*, 549 A.2d at 166. In *Crislip*, this Court set forth the requirements for a civil contempt proceeding.

a contemnor in a civil contempt action would not be able to appeal the contempt order until he/she was incarcerated or had paid sums owing as sanctions for contempt. It seems inappropriate and unnecessarily harsh for a contemnor in a civil contempt action to undergo incarceration or fulfill another sanction before this Court will accept an appeal of a contempt order. Rather, we conclude that, for a contempt order to be properly appealable, it is only necessary that the order impose sanctions on the contemnor and that no further court order be required before the sanctions take effect.[7]

¶ 18 Thus, in the present case, although purge conditions were included in the May 30, 2000 Order (*i.e.*, that Percy pay $5,000.00 and $886.11 plus interest before June 29, 2000, or work in the Outmate Program for 90 days), the purge conditions did not render the Order interlocutory. The purge conditions merely allowed Percy "to carry the keys to the jail in his pocket," and no further order was required for the sanctions to become effective. Accordingly, the May 30, 2000 Order was final and appealable.

∎ ¶ 19 We will now address the merits of Percy's appeal. Percy first contends that the trial court erred in establishing a purge amount and in finding that Percy has the present ability to pay the purge amount because the information upon which the trial court relied was over one year old at the time of the decision.

∎ ¶ 20 Appellate review of a contempt order is limited to deciding whether the trial court abused its discretion. *McMahon v. McMahon*, 706 A.2d 350, 355 (Pa.Super.1998). The trial court abuses its discretion if, in resolving the issue for decision, it misapplies the law, exercises its discretion in an unreasonable manner, or does not follow legal procedure. *Lachat*, 769 A.2d at 487.

¶ 21 Percy's appellate brief contains no further discussion of his claim that the information upon which the trial court relied was more than one year old. Therefore, Percy has waived that issue. *See Korn v. Epstein*, 727 A.2d 1130, 1135 (Pa.Super.1999); *Commonwealth v. Luktisch*, 451 Pa.Super. 500, 680 A.2d 877, 879 (1996) (holding that an issue is waived where the appellant failed to develop it in argument and cited no legal authority).

∎ ¶ 22 Percy argues that the trial court's May 30, 2000 Order was an abuse of discretion because one of the purge conditions included therein was participation in the Outmate Program for 90 days. Percy asserts that the May 30, 2000 Order is therefore an order of criminal contempt "because the passage of time creates a circumstance where the money purge may be unattainable." *See* Brief for Appellant, at 6. Percy does not support this assertion with any further argument or citation to authority. Thus, he has waived the issue. *See Korn*, 727 A.2d at 1135; *Luktisch*, 680 A.2d at 879. In addition, Percy did not include this issue in his Statement of Matters Complained of on Appeal, which the trial court ordered him to file on July 5, 2000. Because he failed to raise the issue in his Statement of Matters Complained of on Appeal, Percy has waived this issue for purposes of appellate review. *McKeeman v. Corestates Bank*,

---

**7.** We acknowledge the concern expressed in the dissenting Opinion of my distinguished colleague, Judge Joan Orie Melvin, that a contemnor, by filing an appeal before a purge condition has been met, may diminish the trial court's contempt powers. However, we note that pursuant to the Rules of Appellate Procedure, the filing of an appeal does not preclude the trial court from enforcing its own orders unless it has granted a *supersedeas*. *See* Pa.R.A.P. 1701(b)(2).

*N.A.*, 751 A.2d 655, 658 (Pa.Super.2000) (holding that failure to include an issue in a Rule 1925(b) statement waives that issue for purposes of appellate review).

¶ 23 Percy next contends that the trial court erred in finding him in contempt for failing to report changes in his status to the Domestic Relations section, and for failing to perform a job search. He argues that the parties' agreement required that it be enforced as a contract, and thus, the trial court improperly applied enforcement provisions relevant to child and spousal support orders under the Divorce Code.[8]

¶ 24 We note that in the May 30, 2000 Order, the trial court did not find Percy in contempt for failing to perform a job search. Thus, we need not address that allegation.

¶ 25 Percy also argues that the trial court erred in imposing a requirement upon him to report changes in his status.[9]

¶ 26 It is hornbook law that when a final judgment on the merits has been rendered by a court of competent jurisdiction, the doctrine of *res judicata* will bar any future suit on the same cause of action between the same parties. 10 STD. PA. PRACTICE 2d § 65:67. Application of the doctrine of *res judicata* requires that the two actions possess the following common elements: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; [and] (4) identity of the capacity of the parties. *Id.* § 65:61. *Res judicata* encompasses not only those issues, claims or defenses that were actually raised in the prior proceeding, but also those which could or should have been raised but were not. *Id.* § 65:57.

¶ 27 The present contempt action, filed October 29, 1998, and the prior one filed by Virginia on November 13, 1997, possess common elements which meet the requirements of the doctrine of *res judicata.* In both cases, the thing sued upon was the trial court's directive that Percy pay the alimony payments which he had failed to pay, and that he pay Virginia's attorneys' fees and costs of $886.11. The causes of action are the same: enforcement of the parties' agreement and contempt for failing to comply with the trial court's May 6, 1997 and September 10, 1998 Orders. The parties are the same, and the capacity of the parties as divorced husband and wife is the same. Applying the doctrine of *res judicata,* we conclude that because Percy could have raised the issue of the validity of the requirement that he report status changes in the prior contempt action, but failed to do so, Percy is precluded from raising that issue in the present appeal. *See Commonwealth ex rel. Cook v. Cook,* 303 Pa.Super. 61, 449 A.2d 577 (1982) (holding that the appellant was barred from raising the issue of the trial court's jurisdiction to order support payments because he had failed to raise the issue by filing an appeal of a prior support order in the same case; *res judicata* may be pleaded as a bar, not only as to issues actually presented in the prior proceeding, but also as to any matter which might have been presented in the prior proceeding).[10]

**8.** *See* 42 Pa.C.S.A. § 4353 (requiring a party to a support action to notify the domestic relations section within seven days of any material change in circumstances, including change of employment and change of address).

**9.** Percy raised this issue in his Statement of Matters Complained of on appeal.

**10.** It is also true that Percy waived the issue of the validity of the requirement of reporting status changes by failing to raise it in the prior proceeding. *See Smitley v. Holiday Rambler Corporation,* 707 A.2d 520, 525 (Pa.Super.1998) (stating that an appellant "cannot pursue in a subsequent appeal mat-

¶ 28 Percy next contends that the trial court erred in finding that he had willfully disobeyed an order for the payment of alimony because Virginia had received the sum of $25,000 on behalf of Percy's alimony obligation, which has never been credited. Percy's entire argument on this subject consists of a mere two sentences, with only one reference to the record, and no citation to authority. Because Percy has not properly developed his argument on this issue, we deem it waived. *See Korn*, 727 A.2d at 1135; *Luktisch*, 680 A.2d at 879.

¶ 29 Even if the issue had not been waived, we would conclude that it lacks merit for the following reasons, as set forth by the trial court:

Husband [complains] that the Court erred in finding that [he] was in contempt of the Court's Order, because Wife had received a payment of $25,000.00 from the bankruptcy proceeding involving Husband's former company.

The matter of money received by Wife from the bankruptcy involving Husband's former business is not a part of this proceeding. There was no testimony that was offered with regard to funds received by Wife from the bankruptcy action. There were prior matters involving these parties with regard to the $25,000.00 in which Wife sought the Court's assistance in prohibiting Husband from obtaining those funds. However, there is no evidence as to the purpose of the receipt of any money by Wife from the bankruptcy action.

The [c]ourt can merely speculate as to whether or not Wife did receive the $25,000.00 from the bankruptcy action and can only speculate as to the purpose of the receipt of the $25,000.00, if it was

in fact received by Wife. However, even if that were a matter of record, it is clear by the Agreement of the parties that Husband was to pay Wife alimony in the amount of $6,000.00 per month commencing January 15, 1995, and ending in October of 1999. Since September of 1995, Husband has paid Wife less than $2,000.00 on account of his alimony obligation. Therefore, even if Wife did receive $25,000.00, and even if [it] were to be applied to Husband's alimony obligation to Wife, Husband would still owe Wife in excess of $260,000.00, together with interest on that amount for the payments he failed to make from October of 1995 through October of 1999.

Trial Court Opinion, 9/1/00, at 8–9. We find no abuse of discretion in the above reasoning by the trial court in regard to Percy's claim regarding the $25,000 payment allegedly received by Virginia.

¶ 30 For the above reasons, we affirm the trial court's Order of May 30, 2000.

¶ 31 Order affirmed.

¶ 32 ORIE MELVIN, J., files a Dissenting Opinion.

¶ 33 JOYCE, J., joins the Dissenting Opinion.

¶ 34 STEVENS, J., joins the Dissenting Opinion.

ORIE MELVIN, J., Dissenting:

¶ 1 I disagree with the majority that the Order of civil contempt is a final appealable order. Because I find the Order is interlocutory, I respectfully dissent.

¶ 2 An appeal will lie only from a final Order unless otherwise permitted by statute. *Robec, Inc. v. Poul*, 452 Pa.Super. 264, 681 A.2d 809 (1996); 42 Pa.C.S.A. § 742. It is well settled that unless sanc-

ters which he or she could have pursued in a     prior appeal").

tions or imprisonment are imposed, an Order declaring a party to be in contempt is held to be interlocutory and not appealable. *Mrozek v. James*, 2001 PA Super 199, 780 A.2d 670; *Sargent v. Sargent*, 733 A.2d 640, 641 (Pa.Super.1999); *Gaster v. Gaster*, 703 A.2d 513 (Pa.Super.1997); *McManus v. Chubb Group of Insurance Companies*, 342 Pa.Super. 405, 493 A.2d 84 (1985); *Rulli v. Dunn*, 337 Pa.Super. 613, 487 A.2d 430 (1985). Moreover, a threat to impose sanctions in the future is neither final nor appealable. *Genovese v. Genovese*, 379 Pa.Super. 623, 550 A.2d 1021, 1022 (1988).

¶ 3 In determining the finality of a civil contempt order, I believe emphasis should be placed on whether the trial court has enforced the sanction. In the absence of enforcement, I believe this Court is without jurisdiction to engage in appellate review. *See Hester v. Bagnato*, 292 Pa.Super. 322, 437 A.2d 66 (1981) (quashing civil contempt order as interlocutory in absence of imposition of sanctions).

¶ 4 Contrary to the majority, I find *Sargent* persuasive and factually analogous to the instant case. In *Sargent*, the trial court entered an Order finding Father in contempt for non-payment of child support. The Order also imposed a sentence of incarceration of six months unless Father met the purge condition of paying Mother $5,538.00 plus fees within thirty-days. However, prior to the expiration of that thirty-day period, Father filed an appeal. Subsequently, a panel of this Court quashed the appeal finding the order appealed from was interlocutory and unappealable as the threatened sanction had not yet been imposed.

¶ 5 Similarly, in the present case, the trial court entered an Order on May 30, 2000, finding Husband in contempt. The trial court further imposed consecutive sentences of two six-month probation terms and two six-month prison terms unless Husband met purge conditions which included paying Wife $5,000 plus attorney's fees before June 29, 2000, or working in the Outmate Program for a period of 90 days. On June 29, 2000, prior to the imposition of any sanction, Husband filed the instant appeal. Accordingly, based upon our holding in *Sargent*, I believe this appeal should be quashed as interlocutory. *Cf. Lachat v. Hinchliffe*, 769 A.2d 481 (Pa.Super.2001) (holding a trial court's order which explicitly imposed sanctions on a finding of contempt final and appealable). *Cf. Griffin v. Griffin*, 384 Pa.Super. 210, 558 A.2d 86 (1989), *appeal denied*, 524 Pa. 621, 571 A.2d 383 (1989) (holding order of contempt final and appealable because appellant did not timely meet purge condition and sanction of imprisonment was imposed prior to filing of appeal).

¶ 6 Finally, I recognize the decision reached by the majority is also contrary to the holdings in several other jurisdictions. *See Whitworth v. Jones*, 41 S.W.3d 625 (Mo.Ct.App.2001) (holding civil contempt order interlocutory and unappealable when record revealed appellant had not complied with court's order or that enforcement of the order had been sought); *Clark v. Myers*, 945 S.W.2d 702 (Mo.Ct.App.1997) (holding civil contempt order is not final until judgment enforced); *Vowell v. Pedersen*, 315 Ill.App.3d 665, 248 Ill.Dec. 461, 734 N.E.2d 169 (2000) (holding that in order for an appellate court to assume jurisdiction, the contempt order must impose sanctions of some kind upon the contemnor); *see also Jessen v. Jessen*, 5 Neb. App. 914, 567 N.W.2d 612 (1997); *Bayless v. Bayless*, 580 N.E.2d 962 (Ind.Ct.App. 1992); *Bowman v. Bowman*, 493 N.W.2d 141 (Minn.Ct.App.1992); *Madden v. Madden*, 558 P.2d 669 (Wyo.1977); *E.I. duPont de Nemours & Co. v. Universal Moulded*

*Products Corp.*, 189 Va. 523, 53 S.E.2d 835 (1949).

¶ 7 Therefore, in light of the interlocutory nature of this appeal, I find this Court lacks jurisdiction, and the appeal should be quashed. Accordingly, I respectfully dissent.