J-A35014-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.P.W., JR., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| A.N.H., | |
| Appellant | No. 646 WDA 2014 |

Appeal from the Order Entered March 25, 2014
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2010-10883

BEFORE:  BENDER, P.J.E., BOWES, J., and ALLEN, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED JANUARY 14, 2015**

A.N.H. (Mother) appeals from the custody order entered March 25, 2014, following a trial *de novo*, which granted J.P.W., Jr. (Father) sole legal custody and primary physical custody of their child, A.J.W. (Child) (born in November 2010).  We affirm.

Father filed a complaint seeking custody of Child in December 2010. Thereafter, the trial court entered preliminary orders in January and March 2011, granting primary physical custody of Child to Mother.  Mother filed a request for trial *de novo*, and this contentious litigation continued through 2011 and 2012, including numerous petitions for contempt brought by Father and several requests for continuance filed by the parties.

Trial *de novo* commenced in February 2013.  Following a lengthy continuance to permit Mother an opportunity to obtain a second custody

evaluation, additional trial testimony was heard in August 2013 and March 2014.[1] The trial court issued factual findings, based upon its consideration of the factors enumerated in the Custody Act, 23 Pa. C.S.A. § 5328(a), and a final custody order. We adopt the following statement of its findings:

**(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.**

Father is clearly more likely to encourage, permit and promote frequent and continuing contact between [Child] and [Mother]. Father testified that he keeps a photograph of Mother and her other children in [Child's] bedroom in his home. Father encourages [Child] to maintain a connection with [Mother] and his step-siblings. On the other hand, there was no testimony from Mother that she reciprocated in this regard. In fact, the testimony indicated that Mother discouraged any connection [between] [Child] and Father, e.g. removing personal items from [Child] such as an article of clothing or his blanket, immediately upon his return to her home.

**(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.**

Mother had filed a PFA petition against her estranged husband, [J.H.], on January 7, 2009, during the course of their contentious divorce. The [c]ourt ultimately denied Mother's request for relief under the Protection from Abuse Act on January 16, 2009. Although Mother claims [that] she and [J.H.] have reunited, they admittedly maintain separate homes, so he is not a fulltime member of Mother's household. However, according to Mother, [J.H.] spends significant time in Mother's home. While the [c]ourt does not find credible Mother's claim that her

_____

[1] In total, there have been three custody evaluations in this case: two performed by Dr. William Bush and one by Dr. Eric Bernstein.

- 2 -

decision to file a PFA against [J.H.] was driven by Father, currently there seems to be peace in Mother's household, even when [J.H.] is present.

There are no such issues in Father's household.

**(3) The parental duties performed by each party on behalf of the child.**

Both parents have been performing the necessary parental duties for [Child].  Although both parents sling some mud at each other pursuant to their acrimony, both Mother and Father are attentive to [Child's] needs.

**(4) The need for stability and continuity in [Child's] education, family life and community life.**

Father presents a more stable force in this regard than Mother. Although both parties have had prior relationships, Mother's "on again off again relationship" with her estranged husband, before and after her relationship with Father, has to be confusing to [Child] and her other children.  In addition, in light of the other findings set forth herein, the [t]rial [c]ourt found Father to represent more stability and continuity for [Child's] education and family and community life.

**(5) The availability of extended family.**

Father shares a home with his mother, and has a good relationship with his sister.  Both paternal relatives have a relationship with [Child] and are committed to his best interests. Mother offered no testimony of extended family relationships other than her estranged husband and her other minor children.

**(6) The child's sibling relationships.**

It seems clear that [Child] has a close relationship with his half siblings, Mother's children from two prior relationships, who are ages 23, 15 and 10 years old.  The 15[-]year[-]old, J.H.[,] and the 10[-]year[-]old, L.H.[,] both live with Mother, and it is apparent that [Child] has a good relationship with both of them and enjoys their company.  [Child] also has a relationship with Father's adult son[;] however his paternal half-brother lives on

the west coast of the country so their opportunities to spend time together are very limited.

**(7) The well-reasoned preference of the child, based on the child's maturity and judgment.**

Since [Child] just turned three[-]years[-]old on November 3rd of [2013], he is not in a position to express his well-reasoned preference.

**(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.**

As set forth above, there is no evidence that domestic violence is an issue currently in the household of either parent. There was no direct evidence presented that either party attempts to turn [Child] against the other parent[;] however, several of Mother's behaviors would suggest that this is her intention. Mother refused to give [Child] Father's last name, and continues to vehemently contest Father's legal action to change [Child's] last name. Mother immediately removes any article of clothing or any other item which [Child] may bring from Father's home. Mother schedules medical and therapy appointments for [Child] without notice to Father and attempts to exclude Father from important events in [Child's] life. Father, on the other hand, expressed the importance of maintaining [Child's] connection with each parent's home, "two homes, one life," and testified of having a photograph of Mother and her family in [Child's] bedroom and described other ways for [Child] to "maintain a connection with both homes." Mother offered no such testimony.

**(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.**

Both parties are capable of maintaining a loving and nurturing relationship with [Child] adequate for [Child's] emotional needs. Father's home life is more consistent and stable than Mother's, and the scales tip in his favor, in this regard. As noted above, Mother has some kind of "on again, off again" relationship with her estranged husband, which demonstrates neither stability nor

- 4 -

consistency, and which undoubtedly causes confusion for [Child] and his step-siblings. Mother refuses to accept that [Child] needs to have a close relationship with [Father], and feels that [Child's] relationship with her other children and her estranged husband is more important.

**(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.**

Both parties are capable of taking care of [Child's] daily physical and emotional needs. Mother continues to claim that [Child] has special needs, particularly "autistic features," and that [Child] has developmental delays, although the medical and behavioral evidence shows the contrary. Father is more in tune to [Child's] educational needs, and is already researching preschool and kindergarten providers. Mother refuses to accept the provider's reports that [Child] is no longer developmentally delayed.

**(11) The proximity of the residences of the parties.**

The parties reside within a few miles of each other so that proximity of their residences is close and is not an issue.

**(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements when necessary.**

The parties have been sharing custody of [Child] on nearly an equal rotation since February of 2013. Both parents are available to care for [Child] and have been able to make child-care arrangements when necessary.

**(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

There is a great deal of conflict between the parties, which interferes significantly with their ability to co-parent [Child], and which is deleterious to [Child's] best interests. The conflict is painfully obvious to the [c]ourt[,] which must unfold these issues over the protracted proceedings in the custody matter, in

addition to the name change litigation, which is currently on appeal. As set forth above, Mother refused to give [Child] Father's last name, but choose [sic] instead the [sur-]name of her estranged husband, with whom she had a bitter divorce and proceedings under the Protection from Abuse Act. When Mother requested a continuance of the custody proceedings after the first day of hearings, so that Mother could secure a new custody evaluation, the [c]ourt entered a temporary order in accordance with the proposal the parties were discussing. From this temporary interim order, Mother filed an appeal to the Superior Court[,] which was later quashed. After Mother's custody evaluator, Dr. Bernstein recommended an equal shared custody schedule, Mother refused to consider the recommendation and proceeded with three additional days of hearings.

**(14) The history of drug or alcohol abuse of a party or member of a party's household.**

There was no credible evidence that either party has a history of drug or alcohol abuse, or that any member of either household has such an issue. Mother made great efforts to attempt to portray Father as having a problem with alcohol abuse[;] however the [c]ourt did not find her testimony credible.

**(15) The mental and physical condition of a party or member of a party's household.**

There are no obvious mental or physical conditions of either parent which were presented to the [c]ourt[;] however, Mother's behavior, as set forth herein, calls into question Mother's mental fitness to be an appropriate parent for [Child].

**(16) Any other relevant factor.**

Mother's inability to cooperate with Father, on even the most basic level, is the source of much of the parties['] conflict and their resulting "stale mate" in their ability to co-parent. Dr. Bernstein testified that after having been involved with over 600 custody cases over the years, he would rate these parties in the "top two" of high conflict parents. Dr. Bernstein recommended that the parties engage in co-parenting counseling with a counselor experienced with high conflict cases. Dr. Bush also recognized the significant acrimony between the parties and recommended that the parties complete a course of co-parenting

in order to facilitate a shared custody schedule. While co-parenting education would be helpful if the parties sincerely participated in the same, the [c]ourt does not feel that it would be productive to compel the parties to complete such counseling. Perhaps one day the parties will recognize the benefit of working together and agree to engage in co-parenting counseling on their own, without being court-ordered to do so.

Opinion & Order, 3/25/2014, at 4-10 (footnotes omitted).

The court awarded sole legal custody and, following a transitional period leading to Child's placement in school, primary physical custody to Father. Mother timely appealed and filed a court-ordered Pa. R.A.P. 1925(a) statement. The trial court filed a responsive opinion.

Mother raises the following issues on appeal:

[1.] Whether the trial court committed an abuse of discretion in failing to recuse itself when [Mother] demonstrated that there were factors and circumstances that questioned the Judge's impartiality in the custody matter and when the trial court failed to demonstrate impartiality.

[2.] Whether the trial court erred in awarding Father primary custody when [Child] began preschool when the court found that the great majority of the custody factors under Section 5328 were equal but found against the weight of the evidence that Mother's home was less stable, that Mother was frustrating Father's relationship with [Child], that Mother was the source of acrimony between the parties, and the court did not consider [Child's] relationship with his siblings and the effect of limiting [Child's] contact with them.

[3.] Whether the trial court committed an abuse of discretion in awarding the parties shared physical custody until [Child] began preschool, but then awarded Father primary physical custody thereafter.

[4.] Whether the trial court committed an abuse of discretion in awarding Father sole legal custody when the facts of record demonstrated that Father failed to act in [Child's] best interest in

- 7 -

obtaining medical treatment, including evaluations for potential behavior and cognitive delays.

[5.] Whether the trial court committed an abuse of discretion when ordering the parties to cooperate with [Child's] religious training[.]

[6.] Whether the trial court committed an abuse of discretion when it ordered that the parties use Skype, FaceTime or other technology regarding the availability of the technology to the parties or the parties' ability to comply.

Mother's Brief, at 21-23.

First, Mother contends that the trial judge, the Honorable John F. DiSalle, should have recused.[2] We review a trial court's denial of a motion to recuse for an abuse of discretion. *In re A.D.*, 93 A.3d 888, 892 (Pa. Super. 2014) (citing *Vargo v. Schwartz*, 940 A.2d 459, 471 (Pa. Super. 2007)). "Indeed, our review of a trial court's denial of a motion to recuse is exceptionally deferential." *Id.*

It is beyond dispute that a party to an action has the right to request the recusal of a jurist where that party has a reason to question the impartiality of the jurist in the cause before the court. However, a mere recitation of unfavorable rulings against an attorney does not satisfy the burden of proving judicial bias, prejudice or unfairness. Moreover, a party seeking recusal or

_____

[2] Father contends that the trial court's order denying Mother's motion to recuse, entered January 31, 2013, constituted a final order and that her failure to appeal timely from the order results in waiver. Father is incorrect. *See In re Bridgeport Fire Litigation*, 51 A.3d 224, 229 (Pa. Super. 2012) ("[A]n order on a motion for recusal is an interlocutory order for purposes of an appeal.") (citing *Rohm and Haas Co. v. Lin*, 992 A.2d 132, 149 (Pa. Super. 2010)); *Krieg v. Krieg*, 743 A.2d 509, 511 (Pa. Super. 1999). Thus, Mother properly appeals from the final custody order entered March 25, 2014.

disqualification must raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred.

***Ware v. U.S. Fidelity & Guar. Co.***, 577 A.2d 902, 905 (Pa. Super. 1990) (internal quotations and citations omitted).

According to Mother, Judge DiSalle failed to demonstrate impartiality when he scheduled and conducted a hearing on Father's petition to change Child's surname. The hearing occurred on September 7, 2012. It appears from the record that Judge DiSalle convened the hearing on short notice when counsel for Mother complained that delaying the hearing until the trial *de novo*, as originally agreed, would be inappropriate under the rules. Thereafter, during the hearing, Judge DiSalle questioned Mother and Father regarding two previous court actions, over which he had presided, involving Mother, Father, and Mother's estranged husband, J.H.

Initially, we observe that Mother did not file her motion to recuse until January 31, 2013, more than four months after the name change hearing occurred. In our view, Mother waited too long to seek recusal. Further, it is not at all clear why Mother disputes the scheduling of the hearing or the manner in which Judge DiSalle conducted it. Indeed, Mother has previously acknowledged that any procedural issues regarding scheduling were easily addressed and would not affect the merits of Father's motion. **See** Motion to Recuse, Exhibits A & B. Finally, Judge DiSalle's questions referencing related matters involving the parties revealed no partiality, nor did Mother object at

the time. ***See Jones v. Jones***, 884 A.2d 915 916 (Pa. Super. 2005) ("It is clear that when making a decision as to the current best interests of the children, the trial judge can consider the history of the parties.") (citing ***Snarski v. Krincek***, 538 A.2d 1348, 1359 (Pa. Super. 1988)). Accordingly, we discern no abuse of the court's discretion.[3]

In her second, third, fourth, and sixth issues, Mother challenges the trial court's findings as against the weight of the evidence or without evidentiary support in the record. The scope and standard of our review is settled:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law,

_____

[3] In her brief, Mother also raises several claims of purportedly impartial rulings that occurred during the trial *de novo*. ***See generally*** Mother's Brief at 38-48 (discussing unfavorable evidentiary rulings of the court, as well as disputing the impartiality of the court's findings of fact and legal conclusions). However, Mother failed to renew her motion to recuse contemporaneous with these rulings. As a basis for recusal, Mother raises them for the first time on appeal. Thus, we deem them waived. ***Ware***, 577 A.2d at 905 ("A party seeking recusal must assert specific grounds in support of the recusal motion *before* the trial judge has issued a ruling on the substantive matter before him or her.") (emphasis added).

or are unreasonable in light of the sustainable findings of the trial court.

***D.K. v. S.P.K.***, 102 A.3d 467, 478 (Pa. Super. 2014) (quoting ***J.R.M. v. J.E.A.***, 33 A.3d 647, 650) (Pa. Super. 2011)).

Following trial, the court issued detailed factual findings. ***See*** Opinion & Order, 3/25/2014, at 4-10; ***see also*** Opinion, 8/20/2014, at 17-23; ***see*** *supra* at 2-7 (adopting the trial court's findings for appellate purposes). We have reviewed the findings and conclude that they are supported by competent evidence of record.

Conversely, Mother's specific assertions of error are without merit. For example, Mother complains that there was no evidence to support awarding Father primary physical custody when Child began attending school. The record belies this assertion. ***See*** Notes of Testimony (N.T.), 3/14/2014, at 118. Indeed, Mother acknowledged such evidence in her appellate brief. ***See*** Mother's Brief, at 51 ("Finally, when asked by the [c]ourt about potentially changing the schedule from 5-2-2-5 when [Child] starts preschool or kindergarten, Dr. Bernstein, indicated that that might be a time to adjust the schedule.").

Similarly, Mother suggests there was no evidence that she had access to video communication technology, such as Skype or FaceTime. Therefore, according to Mother, it was error to direct the parties to communicate using such technology. This assertion is devoid of merit. First, the order of court provided that Mother "shall have phone *or* video contact with [Child,] and

- 11 -

that "the party out of custody shall select the method of contact[.]" **See** Opinion & Order, at 11-12 (emphasis added). Thus, Mother need not rely on video technology to communicate with Child. Second, the evidence suggested that Mother's other minor children were enrolled in "cyber school." **See** N.T., 8/27/2013, at 39. Thus, Mother may have access to video communication technology.[4]

Finally, regarding Mother's concerns that Child exhibits developmental delays, or perhaps suffers from autism, we observe that the evidence of record indicates Child functions within the normal range for his age. **See** N.T., 3/12/2014, at 92. Accordingly, Mother's evidentiary claims are without merit.

In her fifth issue, Mother challenges a provision of the custody order directing the parties to cooperate in providing Child with religious education. Mother asserts that a court may not interfere with the religious preferences of a parent, citing in support **Frank v. Frank**, 833 A.2d 194, 199 (Pa. Super. 2003). We discern no evidence suggesting the trial court has done so. To the extent Mother complains that religious activities organized by Father may interfere with Mother's custody time, we observe that Father is permitted to enroll Child "in a reasonable number of activities" that may

_____

[4] We note that Mother does not assert that she is without access to such technology.

- 12 -

involve or overlap custody time. Moreover, Mother is expressly permitted to attend such activities. We deem this issue to be without merit.

Also before this Court is Mother's petition for writ of mandamus, in which Mother claims the trial court modified the final custody order without jurisdiction to do so, as Mother's appeal was pending in this Court. *See* Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter."). On September 17, 2014, in response to Father's petition for special relief, the trial court issued an order clarifying its final custody order and scheduling a hearing to determine the cause of Mother's alleged noncompliance with said order. Thus, Mother's claim is without merit, and we deny her petition for writ of mandamus. *See Glynn v. Glynn*, 789 A.2d 242, 246 n.4 (Pa. Super. 2001) (noting that, absent *supersedeas*, a trial court retains its power to enforce orders, despite an appeal therefrom).

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2015