J-A23015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.P.W., JR., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| A.N.H., | |
| Appellant | No. 170 WDA 2015 |

Appeal from the Order entered December 24, 2014,
in the Court of Common Pleas of Washington County,
Civil Division, at No(s): 2010-10883

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED OCTOBER 29, 2015**

A.N.H. ("Mother") appeals from the Order entered on December 24, 2014, granting the Motion for special relief filed by J.P.W., Jr. ("Father"), and placing certain restrictions on Mother with respect to the final custody Order ("Final Custody Order"), entered on March 25, 2014, regarding custody of the parties' minor child, A.J.W. ("Child").[1]  We deny Father's Motion to quash the appeal, and affirm the trial court's December 24, 2014 Order.

The Final Custody Order awarded sole legal custody of Child to Father, and shared physical custody to the parties until Child began to attend preschool, at which time Father would have primary physical custody, and Mother would have partial physical custody.  Mother appealed the Final Custody Order.

---

[1] Child was born in November 2010.

While Mother's appeal was pending, on July 24, 2014, Father filed a Motion for contempt of custody and Motion for clarification of the Final Custody Order. On July 24, 2014, the trial court entered an Order clarifying that Father would have primary physical custody of Child beginning August 20, 2014, and directing Mother to comply with the Final Custody Order.

On September 17, 2014, Father filed a Motion for special relief, seeking further clarification and enforcement of the Final Custody Order. Father alleged several instances of Mother's non-compliance with provisions of the Final Custody Order. Father alleged that Mother exhibited "bizarre" behavior at Child's preschool and at Child's medical examinations. Father requested that the trial court order Mother to undergo a mental health evaluation. In particular, Father asserted that Mother had told the principal of Child's preschool that Child is autistic. On September 17, 2014, the trial court entered an Order further clarifying its Final Custody Order, and scheduling a hearing for November 21, 2014, regarding Mother's alleged non-compliance with the Final Custody Order. The September 17, 2014 Order directed Mother to immediately cease telling anyone that Child is autistic, or developmentally delayed, and imposed the following restrictions on Mother:

> 3. That Mother shall not be at John F. Kennedy Catholic School ["JFK School"] except to pick [] Child up at dismissal at the end of [] Child's school day or to drop him off at the beginning of the school day, as the case may be, as provided under the [Final] Custody Order and such other times as [] Child shall be involved in activities at or through the school for which parents are to be

present, for example, programs, parent teacher conferences, open houses and at such times as Mother may be signed up to volunteer for [] Child's classroom activities.

4. That, while Mother shall be permitted to be [*sic*] the doctor's office for any doctor's appointment involving [] Child and to talk to the doctor before or after the doctor's examination of [] Child, Mother shall not be present in the examination room during a doctor's examination of [] Child. Mother shall communicate any concerns she has regarding [] Child to Father via Our Family Wizard and Father shall report Mother's concerns to the doctor.

Trial Court Order, 9/17/14, at 1-2 (unnumbered).

On October 28, 2014, while her appeal of the Final Custody Order was pending, Mother filed a Petition for a writ of mandamus in this Court, requesting an order (1) restraining the trial court's enforcement of the September 17, 2014 Order; (2) directing the trial court to vacate the Order; and (3) restraining the trial court from holding a hearing on November 21, 2014, for lack of jurisdiction under Pa.R.A.P. 1701. In an Order entered on November 12, 2014, this Court deferred the disposition of Mother's Petition to the merits panel of this Court hearing oral argument on Mother's appeal, and directed the parties to prepare to present argument regarding Mother's Petition at oral argument before the panel. Our Order also directed the trial court to conduct the November 21, 2014 hearing, as scheduled.

The trial court held hearings on Father's Petition for special relief on November 21, 2014, and December 19, 2014. At the hearings, Father presented the testimony of several witnesses, including Child's pediatrician, as well as the principal and various teachers from JFK School. Edward Foley,

M.D. ("Dr. Foley") testified that (1) there is no indication that Child is autistic or developmentally delayed, (2) Child's developmental milestones were appropriate for his age, and (3) Child is a "normal," healthy child. Dr. Foley further testified that, since the trial court restricted Mother from attending Child's medical appointments, there has been a noticeably positive difference in Child's behavior. Both the principal and a preschool teacher at JFK School testified that Mother led them to believe that Child is autistic. Child's teacher at JFK School, Paula Matthews ("Matthews"), testified that she has seen no developmental issues or problems with Child. Additionally, the trial court was presented with evidence that Mother told the school principal and other school officials that Child was not potty trained, when, in fact, Child is potty trained.

In its Order entered on December 24, 2014, the trial court stated as follows:

> [T]he [c]ourt finds that Mother is not acting in [C]hild's best interest by continuing to assert that [C]hild is autistic and suffering from developmental delays[,] when he has no such diagnosis or behavioral issues or developmental issues. The [c]ourt finds that Mother continues to refuse to accept the reports of the medical providers that [C]hild is not autistic or developmentally delayed. The [c]ourt further finds that Mother's behavior in this regard is detrimental to the welfare of [C]hild.
>
> The [c]ourt restates its Order of September 17, 2014, that Mother shall cease and desist from stating to anyone or inferring that [C]hild has autism or developmental delays or other behavioral issues.
>
> Further restrictions from the Order of September 17, 2014 shall be restated as follows: Mother shall not attend JFK []

School, except to pick up [C]hild at the dismissal at the end of [C]hild's school day or to drop him off at the beginning of the school day, as the case may be, as set forth in the [Final] Custody Order, and only at such other times as [C]hild is involved in activities at the school which provide for parents to be in attendance, such as the Christmas program, parent/teacher conferences, open houses or other times that she is, specifically, authorized by the school to be in attendance; [and] Mother shall continue to be restricted from attending the medical appointments in the examination room with [C]hild. Mother may still have access to the information and access to the medical professionals that are treating [C]hild[,] and shall communicate any concerns regarding [C]hild to Father through My Family Wizard.

The [c]ourt shall not order a mental health evaluation[;] however, the [c]ourt recommends that Mother submit to a mental health evaluation and follow all treatment recommendations because of the behavior she has exhibited, per the [c]ourt's findings. In the event Mother violates the provisions of this Order[,] or continues to exhibit other irrational behavior, the [c]ourt shall order a mental health evaluation for Mother.

Trial Court Order, 12/24/14, at 1-3 (unnumbered).

On January 14, 2015, a panel of this Court affirmed the Final Custody Order, and denied Mother's Petition for a writ of mandamus. *See J.P.W., Jr. v. A.N.H.*, 118 A.3d 446 (Pa. Super. 2015) (unpublished memorandum).

On January 23, 2015, Mother filed a Notice of Appeal of the trial court's December 24, 2014 Order, along with a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On February 3, 2015, Father filed a Motion to quash Mother's appeal.

On appeal, Mother raises the following issues for our review:

I. Whether the trial court committed an abuse of discretion in ordering Mother to "cease and desist" from stating to anyone or

inferring that [C]hild has autism or developmental delays or other behavior issues?

II. Whether the trial court committed an abuse of discretion in limiting Mother's attendance and/or presence at [C]hild's school and at [C]hild's medical appointments?

Mother's Brief at 6.

Initially, we observe that, as the hearings in this matter were held on November 21, 2014, and December 19, 2014, the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321 to 5340, is applicable. *See C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id.* at 443 (citation omitted).

Additionally,

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature

- 6 -

of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting

***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

At the outset, we must address Father's Motion to quash the instant appeal. Father contends that this Court previously ruled on Mother's issues. Motion to Quash at 7.[2] Specifically, Father claims that, because the provisions of the December 24, 2014 Order restated the provisions of the September 17, 2014 Order, this Court has already ruled upon such provisions when it denied Mother's Petition for a writ of mandamus. ***Id***.

In response, Mother contends that the trial court's September 17, 2014 Order was temporary in nature, given that the court withheld its final ruling on Father's Petition for special relief until after an evidentiary hearing had been conducted. Mother's Brief in Opposition to Motion to Quash at 3. Mother asserts that the trial court's December 24, 2014 Order, issued following the hearings on Father's Petition for special relief, is a final appealable order pursuant to Pa.R.A.P. 341, and that she has not yet had an

---

[2] In his Motion, Father references an issue raised in Mother's Concise Statement, *i.e*., that the trial court lacked jurisdiction to hold the evidentiary hearings and to modify the Final Custody Order. Motion to Quash at 7. Father asserts that this Court already ruled on the issue when it denied Mother's Petition for a writ of mandamus. ***Id***. Notably, Mother failed to include this issue in her brief on appeal. Therefore, Mother has waived the issue. ***See*** Pa.R.A.P. 2119(a).

opportunity to argue the merits of the December 24, 2014 Order in an appeal to this Court. *Id*.

We reject Father's contention that this Court has already ruled on the issues raised in Mother's instant appeal. In denying Mother's Petition for a writ of mandamus, this Court merely indicated that the trial court retained jurisdiction to clarify and enforce the Final Custody Order. *See J.P.W., Jr. v. A.N.H.*, 118 A.3d 446 (Pa. Super. 2015) (unpublished memorandum at 13) (citing *Glynn v. Glynn*, 789 A.2d 242, 246 n.4 (Pa. Super. 2001) (noting that, absent *supersedeas*, a trial court retains its power to enforce orders, despite an appeal therefrom)). To date, the substance of the trial court's September 17, 2014, and December 24, 2014 Orders have not been addressed by this Court.[3] Thus, we deny Father's Motion to quash.[4]

In her first issue, Mother contends that the provision in the trial court's December 24, 2014 Order forbidding her from speaking to anyone about

---

[3] The trial court suggests that the December 24, 2014 Order is not an appealable order, and that we quash the appeal. *See* Trial Court Opinion, 3/20/15, at 8. The trial court reasons that, because its December 24, 2014 Order did not modify the award of custody issued in the Final Custody Order, did not grant Father's request to compel a mental health evaluation of Mother, and did not find Mother in contempt or issue sanctions, it is not a final order. *See id*. However, the December 24, 2014 Order disposed of all claims that had been raised by the parties; thus, we reject the trial court's suggestion that the Order is not a final order. *See* Pa.R.A.P. 341(b)(1).

[4] For the same reason, we reject the trial court's suggestion that Mother's second issue should be waived because she failed to raise it following the entry of the Final Custody Order. *See* Trial Court Opinion, 3/20/15, at 12, 13. As noted above, the substance of the trial court's September 17, 2014 and December 24, 2014 Orders have not been addressed by this Court.

- 8 -

Child being autistic, or her concerns regarding his behavioral and developmental issues, unduly encumbers her fundamental liberty interest in her care and custody of Child. Mother's Brief at 17. Mother asserts that the trial court's restriction also encumbers her right to free speech, as guaranteed by the First Amendment to the Constitution of the United States. *Id*. at 17-18. Mother claims the trial court's restriction on her speech does not serve a compelling public interest, is not narrowly tailored, and does not leave open ample alternative channels. *Id*. at 18. Additionally, Mother asserts that the language of trial court's Order, *i.e.*, forbidding her from speaking to anyone about Child being autistic or her concerns regarding his behavioral and developmental issues, is unreasonably vague. *Id*. at 19-20. Mother challenges the trial court's determination that her comments are not in Child's best interest as against the weight of the evidence, because Mother did not make her comments in front of Child. *Id*. at 21. Additionally, Mother argues that, because she has no legal custodial rights over Child, her comments are of no effect, as no one can act on them. *Id*. at 21-22. Mother contends that the trial court's prohibition is "incredibly overbroad," "unduly burdensome, intrusive and vague[,] and was a gross

abuse of discretion." ***Id***. at 22-23.[5]

Mother's claim implicates two highly important values: the free exercise of speech, as guaranteed by the First Amendment to the Constitution of the United States; and the fundamental right of parents to make decisions concerning the care, custody, and control of their children, as protected by the Due Process Clause of Fourteenth Amendment. ***See Troxel v. Granville***, 530 U.S. 57, 65-66 (2000); ***see also Shepp v. Shepp***, 906 A.2d 1165, 1168-69 (Pa. 2006) (addressing the traditional interest of parents with respect to the religious upbringing of their children).

A state's interest is not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protected by the Free Exercise Clause of the First Amendment, and the traditional interest of parents with respect to the upbringing of their children. ***See Shepp***, 906 A.2d at 1169; ***see also Wisconsin v. Yoder***, 406 U.S. 205, 214 (1972). Furthermore, only those interests of the highest order and those not otherwise served can overbalance legitimate claims to a free exercise right. ***See Shepp***, 906 A.2d at 1169 (discussing court imposed

---

[5] Mother also argues that the trial court's restriction on her speech implicates equal protection issues, as the trial court could not have imposed the same restriction if Mother and Father were an intact family. Mother's Brief at 19. Mother contends that the trial court should not be permitted to limit her right to free speech based on the "best interests of Child" simply because she and Father are not married. ***Id***. However, Mother failed to provide any legal authority, or discussion thereof, in support of these assertions. ***See*** Pa.R.A.P. 2119(a). Accordingly, they are waived on appeal.

restrictions on the free exercise of religion). However, when the free exercise clause is implicated in conjunction with other constitutional protections, such as the freedom of speech and the right of parents with respect to the upbringing of their children, "a hybrid situation" is presented, which is subject to strict scrutiny. *See id*. at 1172 (citing *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 881 n.1, 882 (1990) ("*Smith II*") (reaffirming a higher level of scrutiny for cases involving a free exercise claim made in conjunction with other constitutional protections, such as the right of a parent to direct the upbringing and education of his child). The instant matter, combining a free exercise claim with the fundamental right of parents to raise their children, is a "hybrid case." *See Shepp*, 906 A.2d at 1172. Thus, we will apply a higher level of scrutiny.

As previously noted, only those interests of the highest order and those not otherwise served can overbalance legitimate claims to a free exercise right. *See id*. at 1169. "Applying strict scrutiny, '[t]he [g]overnment may ... regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest.'" *Shepp*, 906 A.2d at 1173 (quoting *Sable Communications*, 492 U.S. at 126). The government has an interest in protecting "the physical or mental health of the child." *Shepp*, 906 at 1173 (citing *Yoder*, 406 U.S. at 230). Indeed, "there is a compelling interest in

protecting the physical and psychological well-being of minors." **Shepp**, 906 at 1173 (citing **Sable Communications of California v. FCC**, 492 U.S. 115, 126 (1989)). Thus, "[t]he power of the parent, even when linked to a free exercise claim, may be subject to limitation … if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens." **Shepp**, 906 A.2d at 1173 (citing **Yoder**, 406 U.S. at 233-34). "The state's compelling interest to protect a child in any given case, however, is not triggered unless a court finds that a parent's speech is causing or will cause harm to a child's welfare." **Shepp**, 906 A.2d at 1173.

Here, as noted above, Dr. Foley, Child's pediatrician, testified that there is no indication that Child is autistic or developmentally delayed. **See** Trial Court Opinion, 3/20/15, at 3-4 (citing N.T., 11/21/14, at 9-10, 12). Dr. Foley further testified that Child's developmental milestones were appropriate for his age, and that he is a "normal," healthy child. **See** Trial Court Opinion, 3/20/15, at 4 (citing N.T., 11/21/14, at 16). Finally, Dr. Foley testified that, since Mother has been restricted from attending Child's medical appointments, there has been a noticeably positive difference in Child's behavior. **See** Trial Court Opinion, 3/20/15, at 4-5 (citing N.T., 11/21/14, at 13). The principal at JFK School testified that Mother led her to believe that Child is autistic. **See** Trial Court Opinion, 3/20/15, at 5 (citing N.T., 11/21/14, at 45). Child's teacher at JFK School, Matthews, testified

that she has seen no developmental issues or problems with Child. *See* Trial Court Opinion, 3/20/15, at 6 (citing N.T., 11/21/14, at 31). A preschool teacher from Child's school, Janice Woods, testified that Mother told her that Child is autistic. *See* Trial Court Opinion, 3/20/15, at 5 (citing N.T., 12/19/14, at 6, 14-15). Additionally, the trial court was presented with evidence that Mother told the school principal and other school officials that Child was not potty trained, when in fact the Child was potty trained. *See* Trial Court Opinion, 3/20/15, at 6 (citing N.T., 12/19/14, at 8, 16, 29; N.T., 11/21/14, at 32, 42-43, 50-51).

Based on this evidence, the trial court found that Mother's untrue statements regarding Child's mental health and developmental and behavioral progress are detrimental to Child's welfare. *See* Trial Court Opinion, 3/20/15, at 3, 11. The findings and analysis of the trial court are amply supported by the competent evidence of record. *See id*. at 3-6, 9-11; *see also id*. at 11 (stating that "Mother's desire to disparage and defame her Child by telling others that he is developmentally delayed or that he is not potty trained is not constitutionally protected, and Mother's right of free speech cannot supersede the health, safety and welfare of her Child.").

Additionally, we conclude that the trial court chose the least restrictive means to protect the psychological well-being of Child, by narrowly proscribing that "Mother shall cease and desist from stating to anyone or inferring that [C]hild has autism or developmental delays or other behavioral

issues." *See* Trial Court Opinion, 12/24/14, at 2 (unnumbered). Based on the facts and circumstances of this particular case, we discern no error of law or abuse of discretion by the trial court, and affirm the trial court's Order as to this issue.

In her second issue, Mother argues that the trial court abused its discretion in limiting Mother's presence at (1) at Child's preschool to pick-up and drop-off Child, and regularly scheduled events that parents would attend; and (2) Child's medical appointments, where Mother is prohibited from being in the examination room. Mother's Brief at 23. Mother discusses the testimony of various individuals presented to the trial court during the hearings, and claims that the restrictions imposed by the trial court constitute an impermissible restriction on her periods of partial custody. *Id*. at 25-26.[6]

Notably, in its Final Custody Order, the trial court indicated that both Mother's access to Child's school and medical appointments was not unrestricted. Specifically, the trial court ordered that

---

[6] Mother also asserts that the trial court improperly failed to conduct an analysis of the sixteen factors set forth at 23 Pa.C.S.A. § 5328 when issuing its December 24, 2014 Order. Mother's Brief at 28. We disagree. As discussed herein, the December 24, 2014 Order was not a custody modification order, as no aspect of custody was changed. Rather, the December 24, 2014 Order clarified and enforced the Final Custody Order. Thus, there was no need for the trial court to address the section 5328(a) factors in that Order. *See M.O. v. J.T.R.*, 85 A.3d 1058, 1063-64 (Pa. Super. 2014) (holding that the trial court need not address the section 5328(a) factors where it is not affecting the type of custody and, therefore, not modifying the custody award).

[w]hen Father schedules medical appointments[,] he shall notify Mother on the date the appointment is made[,] and shall attempt to schedule the appointment so that both parents can attend, **provided that the parties can remain civil and not interfere with the medical service providers**. Both **parents are permitted** and encouraged **to attend** all school activities of [C]hild, including participation in parent-teacher conferences and other **activities intended for parents**.

Trial Court Order, 3/25/14, at 16-17 (emphasis added).

Following the evidentiary hearings, the trial court entered its December 24, 2014 Order, wherein it restricted Mother as follows:

Mother shall not attend JFK [] School, except to pick up [C]hild at the dismissal at the end of [C]hild's school day or to drop him off at the beginning of the school day, as the case may be, as set forth in the [Final] Custody Order, and only at such other times as [C]hild is involved in activities at the school which provide for parents to be in attendance, such as the Christmas program, parent/teacher conferences, open houses or other times that she is, specifically, authorized by the school to be in attendance; [and] Mother shall continue to be restricted from attending the medical appointments in the examination room with [C]hild. Mother may still have access to the information and access to the medical professionals that are treating [C]hild[,] and shall communicate any concerns regarding [C]hild to Father through My Family Wizard.

Trial Court Order, 12/24/14, at 2 (unnumbered).

Based on our independent review of the record, and the facts and circumstances of this particular case, we conclude that the trial court's findings are supported by competent evidence of record, and its restrictions on Mother are not unreasonable in light of its sustainable findings. As we discern no error of law or abuse of discretion, we affirm the trial court's remaining restrictions on Mother.

- 15 -

Motion to quash denied.  Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/29/2015</u>