J-S11031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.C.Y., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| | : | |
| J.A.Y., | : | |
| | : | |
| Appellant | : | No. 1465 MDA 2014 |

Appeal from the Order entered on August 22, 2014
in the Court of Common Pleas of York County,
Civil Division, No. 2011 FC 000573-03

BEFORE:  PANELLA, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED APRIL 09, 2015**

J.A.Y. ("Mother") appeals from the Order finding Mother in contempt of the Custody Order and sanctioning her in the amount of $14,250.  We affirm in part and vacate in part.

Mother and T.C.Y. ("Father") were married in 1998 and had a daughter, J.R.Y. ("Child"), in 1998.  The parties separated on March 29, 2011, and eventually divorced on August 26, 2013.  On May 4, 2011, the trial court entered an agreed-upon Custody Order awarding both parents shared legal custody, Mother primary physical custody, and Father partial physical custody.

On May 24, 2011, Father filed a Petition for Modification and Contempt.  On July 6, 2011, the trial court entered an Interim Order, which stated that the Custody Order would be modified to provide that the parties must attend family counseling to better communicate with one another over

the custody issues. On December 15, 2011, the trial court entered an Order reinstating the May 4, 2011 Custody Order. Father filed an Amended Petition for Modification and Contempt, but subsequently withdrew the Amended Petition.

On December 6, 2012, Father filed a "Third Petition for Contempt." Following a hearing, the trial court denied Father's Petition. On September 13, 2013, Father filed another Petition for Contempt seeking to remove a block on Child's cellphone. The trial court entered an Order directing Mother to remove the block, but made no contempt findings.

On June 10, 2014, Father filed the Petition for Contempt at issue in this case. Father objected to Mother's proposed relocation from the Central York School District to the York Suburban School District upon the sale of the marital residence. Father, who lives in the York Suburban School District, sought for Mother to be found in contempt and ordered to remain in the Central York School District.[1] The trial court held a hearing at which Mother, Father, and Child testified. Based upon the evidence presented at the hearing, the trial court found Mother in contempt for failing to discuss with Father the consequences of the move. The trial court directed that Child remain in the Central York School District, and also awarded Father counsel fees in the amount of $1,500.00. The trial court held a second hearing to address the payment of tuition for the Central York School

---

[1] Child was entering her junior year in high school for the 2014-2015 school year.

District.[2]  On August 22, 2014, the trial court entered an Order sanctioning Mother by directing her to pay the total cost of tuition for Child's remaining two years of high school, $14,250.00.[3]  The trial court also suspended Mother's rights to legal custody and granted Father sole legal custody.

Mother filed a timely Notice of Appeal and a Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.  The trial court issued an Opinion.

On appeal, Mother raises the following questions for our review:

1. Did the trial court err in finding Mother to be in contempt?

2. Did the trial court err in deciding that [] [C]hild should attend Central York High School within the context of the contempt hearing?

3. Did the trial court err in directing Mother to pay the cost of tuition in full for [] [C]hild to attend Central York High School?

4. If such cost is to be paid, should it be allocated between the parties in proportion to their net income[,] in conformity with Pa.R.C.P. No. 1910.16-6(d)?

---

[2] The Pennsylvania Department of Education ("PDE") allows a student living in a neighboring public school district to attend the Central York School District by paying tuition.  The PDE sets an annual tuition rate for each school district by calculating the amount the Central York School District pays to a charter school for each resident student who attends the charter.  Central York High School charges a non-resident student's parents this amount to attend the school.

[3] The trial court ordered Father to pay the tuition expenses, but allowed him to deduct the entire tuition expenses from the spousal support he owed Mother.  N.T., 8/19/14, at 46.  The trial court mandated that Father's child support payments shall not change despite the change in spousal support. *Id*. at 47.

   5. Did the trial court err in modifying the legal custody aspect of the underlying custody order within the context of the contempt hearing, granting Father sole legal custody?

Brief for Appellant at 3.

Preliminarily, Mother contends that after finding her in contempt following the July 7, 2014 hearing, the trial court failed to enter a Contempt Order on the record. *Id*. at 16. Mother argues that the failure to enter such an order violates Pennsylvania Rule of Appellate Procedure 108, **Date of Entry of Orders**, and Pennsylvania Rule of Civil Procedure 236, **Notice by Prothonotary of Entry of Order or Judgment**. Brief for Appellant at 16-17.

At the July 7, 2014 hearing, the trial court stated that Mother was in contempt of the Custody Order and awarded Father attorneys' fees. N.T., 7/7/14, at 54. While the trial court did not enter an order on the record to this effect, Mother paid the attorneys' fees. N.T., 8/19/14, at 4. Thereafter, the trial court held a separate hearing on the cost of tuition, wherein it again stated that Mother was in contempt of the Custody Order. *Id*. at 42-43. The trial court then entered an Order, on August 22, 2014, directing Mother to pay Child's tuition costs as a sanction for the finding of contempt. Order, 8/22/14. Mother filed an appeal from this Order. *See Glynn v. Glynn*, 789 A.2d 242, 246 (Pa. Super. 2001) (stating that "[a]n order finding a party in contempt for failure to comply with a prior order of court is final and appealable if sanctions are imposed."). While the trial court failed to enter

an Order following its July 7, 2014 finding of contempt, Mother was on notice of the contempt finding and paid the attorneys' fees resulting from this finding. Further, the trial court had not entered all of its sanctions until the August 22, 2014 Order. Thus, as the August 22, 2014 Order was the *final* pronouncement on the matter, we will allow this appeal to proceed. ***See id*.; *see generally Grossi v. Travelers Personal Ins. Co.*, 79 A.3d 1141, 1144 n.1 (Pa. Super. 2013) (stating that "in the interests of justice and to promote judicial economy[,] an appellate court may regard as done that which ought to have been done and proceed in the matter.") (citation and quotation marks omitted).

When considering an appeal from an order holding a party in contempt for failure to comply with a court order, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion. We also must consider that:

Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge.

The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. Additionally, in proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate, by a preponderance of the evidence[,] that the defendant is in noncompliance with a court order. However, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt. Moreover, we recognize that:

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Habjan v. Habjan*, 73 A.3d 630, 637 (Pa. Super. 2013) (citations, brackets, and quotation marks omitted); *see also Williams v. Williams*, 681 A.2d 181, 183 (Pa. Super. 1996) (stating that in an appeal from a contempt order, "we are confined to a determination of whether the facts support the trial court's decision.").

In her first claim, Mother contends that the trial court abused its discretion in finding her to be in contempt of the Custody Order. Brief for Appellant at 16. Mother argues that Father did not prove the three elements required to sustain a finding of civil contempt. *Id*. at 17. Mother asserts that while she had notice of the Custody Order, Father did not demonstrate that she disobeyed the legal custody language of the Order, or that she acted with wrongful intent. *Id*. at 17-22. Mother claims that she did not enroll Child in York Suburban School District and that she would not do so unless authorized by the trial court. *Id*. at 18. Mother also argues that she sent letters to Father detailing the sale of the marital home (a joint decision of the parties) in January 2014. *Id*. at 19, 22. Mother points out that Father did not want to live in the Central York School District and that he would not agree to have Child attend that school if he had to pay tuition.

*Id*. at 21. Mother asserts that the trial court improperly held her to be in contempt for moving out of the Central York School District. *Id*. at 21-22.

The Custody Order states the following, in relevant part:

LEGAL CUSTODY – The parties shall have shared "legal custody" of the child as that phrase is defined in the Custody Act. Legal custody means the rights of both parents to control and to share in making decisions of importance in the life of their child, including but not limited to educational, medical and religious decisions. The parents shall make these decisions jointly, after discussion and consultation with one another and with a view toward obtaining and following a harmonious policy in the child's best interests.

Order, 5/4/11, at 2.[4]

Here, Mother listed the marital home, which was located in Central York School District, for sale in January 2014 and subsequently moved to a home in the York Suburban School District. N.T., 7/7/14, at 19. Mother planned on enrolling Child in York Suburban School District for the 2014-2015 school year. *Id*. at 20. Mother sent a letter to Father's counsel to inform Father of the move; however, Mother did not discuss with Father the fact that Child would have to change school districts as a result of the move. *Id*. at 25. In response, Father sent Mother three letters stating that he was not in agreement with Mother's decision to change Child's school district. *Id*. at 21-22; *see also id*. (wherein Mother admitted to receiving Father's letters). Father stated that he never conferred with Mother regarding Mother's decision to enroll Child in a new school district. *Id*. at 44-45.

---

[4] As noted above, the Custody Order entered on May 4, 2011 was the Order in effect until the trial court entered the Order at issue in this appeal.

Based upon this evidence, the trial court found that Mother was in contempt of the Custody Order because she "willfully, knowingly, and deliberately" failed to communicate with Father regarding Child's educational needs. ***See*** N.T., 8/19/14, at 42-43; ***see also*** N.T., 7/7/14, at 55.

We conclude that the trial court did not abuse its discretion in making this finding, as the evidence demonstrates that Mother was aware of the Custody Order and Mother knowingly failed to discuss the educational needs of Child with Father. ***See Mrozek v. James***, 780 A.2d 670, 673 (Pa. Super. 2001) (concluding that there was no error in the trial court's contempt finding where the factual findings were supported in the record). Mother's argument that she should not be held in contempt because she had not yet enrolled Child in York Suburban High School is without merit. Indeed, Mother specifically stated that she intended to enroll Child in York Suburban School District for the 2014-2015 school year. N.T., 7/7/14, at 20. Thus, Mother's first claim is without merit.

In her second claim, Mother contends that the trial court erred by ordering that Child remain in Central York High School in the context of the contempt hearing. Brief for Appellant at 22. Mother argues that Father did not make such a request in his Petition for Contempt. ***Id***. at 22-23, 26. Mother also asserts that the trial court's order erroneously modified the Custody Order through the contempt petition by mandating that Child remain in Central York High School. ***Id***. at 23-26. Mother claims that a

change of schools requires the consideration and application of the factors listed at 23 Pa.C.S.A. § 5328(a). Brief for Appellant at 25-26.

Here, Father's Petition for Contempt explicitly requested that the trial court "prevent[] Mother from removing the child from the Central York School District and compel[] her to either remain in the [marital] residence or to rent an alternative residence within the Central York School District for the balance of [Child's] high school academic experience." Petition for Contempt, 6/10/14, at 4 (unnumbered); *see also id*. at 5 (unnumbered) (requesting that the trial court "order Mother to remain in Central York School District for the balance of [Child's] educational experience …). Father's Petition for Contempt did not request a change in physical or legal custody, but instead sought to continue Child's attendance at Central York High School. *See id*. at 4-5 (unnumbered). The trial court considered the best interests of Child in determining that the parties should maintain the status quo, and ordered that Child should continue to attend Central York High School. *See* N.T., 8/19/14, at 43 (stating that Child should continue at Central York High School because she wanted to attend that high school due to her success at the school); N.T., 7/7/14, at 55-56; *see also* N.T., 7/7/14, at 13 (wherein Child testified that she would have preferred to stay in the Central York School District). Thus, the trial court's directive that Child continue attending Central York High School did not change the Custody Order, and a review of the section 5328(a) factors was not required. *See*

***S.W.D. v. S.A.R.***, 96 A.3d 396, 403 (Pa. Super. 2014) (stating that while courts must always consider the best interests of the child, "the § 5328(a) factors were designed to guide the best-interest analysis when a trial court is ordering which party has the right to a form of custody.") (emphasis omitted). Based upon the foregoing, Mother's second claim is without merit.[5]

In her third claim, Mother contends that the trial court erred in ordering her to pay Child's total cost of tuition as a sanction. Brief for Appellant at 26. Mother argues that she is being punished for moving out of the Central York School District. ***Id***. at 26-27, 28. Mother asserts that the sanction was punitive and did not compensate Father for losses resulting from her contempt. ***Id***. at 27, 28, 30. Mother further claims that the trial court, in imposing this sanction, did not provide her with a means of purging the contempt, *i.e.*, avoiding the tuition payments by moving back to the Central York School District. ***Id***. at 29-30.

---

[5] We note that the evidence would have supported placement of Child in the York Suburban School District. Indeed, Child testified that she would not have a problem going to York Suburban High School. N.T., 7/7/14, at 7. Further, both parties testified regarding the difficulty of Child getting to Central York High School from her parents' homes in the York Suburban School District. N.T., 8/19/14, at 6-8, 23-29; ***see also id***. at 37 (stating that Child could walk to school if she attended York Suburban High School from Mother's new home). However, based upon our standard of review and the relevant factual findings, we cannot conclude that the trial court abused its discretion in ordering that Child remain in Central York High School. ***See Habjan***, 73 A.3d at 637; ***Williams***, 681 A.2d at 183.

Relatedly, in her fourth claim, Mother contends that the tuition should have been allocated between Mother and Father in proportion to their net incomes. *Id*. at 30, 32. Mother argues that under Pa.R.C.P. 1910.16-6(d), private school tuition can be divided between the parties, as long as the need for private school is reasonable. *Id*. at 31-32. Mother claims that under Rule 1910.16-6(d), Father should pay 77% of the tuition expenses. *Id*. at 32.

"Sanctions for civil contempt can be imposed for one or both of two purposes: to compel or coerce obedience to a court order and/or to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance with a court order." *Mrozek*, 780 A.2d at 674. Such fines are not punitive and may be purged if the defendant chooses to comply. *Id*. The defendant must always have the "key to the jailhouse door" in regard to such fines; they must not be unconditional. *Gunther v. Bolus*, 853 A.2d 1014, 1018 (Pa. Super. 2004).

As noted above, the trial court found that Mother willfully and knowingly moved out of Central York School District without consulting Father about the impact on Child's educational needs, as required under the Custody Order. Further, the trial court found that it was in the best interests of Child to remain in Central York School District. *See* N.T., 8/19/14, at 43; N.T., 7/7/14, at 55-56; *see also S.W.D*, 96 A.3d at 403 (stating that courts must always consider the best interest of the child). Due to the fact that

Mother's contemptuous conduct caused the tuition expense, the trial court refused to allow Father to suffer financially and ruled that Mother would be responsible for the entire amount. *See* N.T., 8/19/14, at 43-44, 45; *see also* Trial Court Opinion, 9/18/14, at 3-4. However, the trial court stated that Mother would not have to pay tuition if she lived in the Central York School District. N.T., 8/19/14, at 10. As there is support for the trial court's findings in the record, we conclude that the trial court did not abuse its discretion by imposing sanctions in the form of tuition payments on Mother. *See Mrozek*, 780 A.2d at 674 (stating that sanctions are proper elements of a civil contempt order where they are coercive and compensatory). Furthermore, as a result of this conclusion, we need not further address Mother's claim regarding the division of tuition expenses under Rule 1910.16-6(d). Thus, Mother's third and fourth claims are without merit.[6]

In her fifth claim, Mother contends that the trial court improperly modified the legal custody aspect of the Custody Order within the context of the Petition for Contempt. Brief for Appellant at 32. Mother argues that the trial court's action violated her right to due process because Father never sought such a custody modification. *Id*. at 33. We agree.

---

[6] We note that Mother does not argue that she is unable to make the tuition payments. *See Childress v. Bogosian*, 12 A.3d 448, 465 (Pa. Super. 2011) (stating that after a court has found a defendant in contempt of a court order and imposed sanctions, "[t]he alleged contemnor may then present evidence that he has the present inability to comply and make up the arrears."). As Mother does not set forth any claim that she is unable to pay the sanction, we need not address Mother's ability to comply with the contempt and sanction Order.

This Court has repeatedly held that a contempt proceeding cannot be converted into a custody modification proceeding without proper notice and due process. ***See, e.g., G.A. v. D.L.***, 72 A.3d 264, 270 (Pa. Super. 2013) (concluding that the trial court abused its discretion where it modified custody by reinstating a previous order notwithstanding that father, in his petition for contempt, never sought a custody modification); ***P.H.D. v. R.R.D.***, 56 A.3d 702, 706-07 (Pa. Super. 2012) (concluding that the trial court abused its discretion by modifying custody where the contempt petition did not seek such relief and father had no notice of the prospect of custody modification); ***Langendorfer v. Spearman***, 797 A.2d 303, 308-09 (Pa. Super. 2002) (holding that the trial court violated the father's due process rights in modifying legal and physical custody of a child where the contempt petition did not seek a change in the parties' custodial arrangement and there was no prehearing notice that the issue of custody would be considered at the contempt hearing).

Here, Mother was not afforded notice that the trial court would consider modification of the Custody Order and possibly impinge upon her custody rights. Father's Petition for Contempt made no request for a change in custody, and no prehearing notice regarding custody was provided. Father only sought Mother's compliance with the existing Custody Order and a request that Child continue her education at Central York High School. Petition for Contempt, 6/10/14, at 4-5 (unnumbered). Additionally, there

- 13 -

was no indication in the certified record that the trial court would review the legal custody provisions of the Custody Order. The trial court merely stated that Mother would lose her legal custody rights at the end of the August 19, 2014 hearing, and did not provide Mother with any chance to respond to this action. N.T., 8/19/14, at 47.

In accordance with our decisions in **G.A.**, **P.H.D.**, and **Langendorfer**, we conclude that the trial court violated Mother's right to due process in stripping away Mother's legal custody rights under the Custody Order during the contempt proceeding, as custody modification is unequivocally not a sanction for contempt.[7] We stress that the reason for the particularized notice requirements is so that Mother may prepare to litigate that dispute during the contempt proceedings, and the trial court may have the benefit of both parties' well-prepared evidence under section 5328(a) and countervailing legal arguments. **See P.H.D.**, 56 A.3d at 707 (stating that "[n]otice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact

---

[7] We note that the trial court states that this case is distinguishable from **Langendorfer** because the court did not alter "Mother's rights of physical custody[,] but rather addressed her rights of legal custody." Trial Court Opinion, 9/18/14, at 4. A plain reading of the **Langendorfer** decision reveals that this Court addressed a situation wherein the court changed both physical and **legal** custody in response to a contempt petition. **Langendorfer**, 797 A.2d at 304-05. As noted above, this Court has repeatedly stated that courts may not modify custody in the context of a contempt petition/hearing where modification is not at issue.

may make an informed judgment.").[8]  If Father wishes to pursue custody modification, he must petition the court accordingly and provide proper notice.  Thus, we vacate that portion of the Contempt Order granting sole legal custody to Father.

Accordingly, we affirm the Order to the extent that it finds Mother in contempt, requires Child to remain in Central York High School, and requires Mother to pay tuition expenses.  We vacate that part of the Order granting Father sole legal custody.

Order affirmed in part and vacated in part.  Jurisdiction relinquished.

---

[8] We note that Pennsylvania Rule of Civil Procedure 1915.13, which is generally reserved for emergency situations, authorizes a court to grant interim, special relief either on application of a party or *sua sponte*.  **See** Pa.R.C.P. 1915.13 (stating that court may, on application or *sua sponte*, grant interim or special relief including, *inter alia*, an award of temporary custody); **see also Steele v. Steele**, 545 A.2d 376, 378 (Pa. Super. 1988) (stating that Rule 1915.13 allows the court, "under appropriate circumstances[,] to alter a custody/visitation Order when it is in the best interest of the child to do so ... [r]ecognizing that circumstances may change abruptly….").  While the rule may be invoked to provide "special relief" in a contempt setting where emergency changes in circumstances require an interim alteration in custody to safeguard the child's best interests, the rule is not available to override basic due process protections or fundamental parental rights.  Here, the trial court never cited Rule 1915.13, and makes no time limitation to the Order.  Rather, the trial court's Order was made enforceable "until further order of court."  Order, 8/22/14, at 3; N.T., 8/19/14, at 47.  Nothing in the transcript of the hearing on August 19, 2014, indicates that the trial court was making a modification of custody for any reason other than as a punishment for Mother's contempt.  As the trial court never invoked Rule 1915.13, and the change in custody was not made under emergency circumstances, the rule is inapplicable in this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/9/2015