J-A15004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.J.S., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| J.J.T., | |
| Appellant | No. 3577 EDA 2014 |

Appeal from the Order entered November 26, 2014,
in the Court of Common Pleas of Northampton County,
Civil Division, at No(s): C0048CV2014-2619

BEFORE:  BOWES, MUNDY, and FITZGERALD*, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 10, 2015**

J.J.T. ("Mother") appeals from the order entered in the Court of Common Pleas of Northampton County granting her and J.J.S. ("Father") shared legal and physical custody of their daughter, S.J.S.  We affirm.

Mother and Father married on July 19, 2013, and separated eight months later.  S.J.S. was born of the marriage during December 2013.  Prior to the instant custody order, the parties maintained informal custody arrangements that were often derailed by the acrimony between Mother and Father.  In the opinion that accompanied the custody order, the trial court fully and accurately set forth the relevant facts and procedural history of this case, which we adopt herein.  ***See*** Trial Court Opinion, 11/20/14, at 1-14.

---

* Former Justice specially assigned to the Superior Court.

By order dated November 20, 2014, and entered on November 26, 2014, the court granted Mother and Father joint legal[1] and shared physical custody on an alternating weekly basis. The court directed that, unless the parties agree to a different arrangement, the custody exchanges would occur at the Giant Supermarket in Quakertown, Pennsylvania every Sunday at 6:30 p.m. Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) on December 17, 2014. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 13, 2015, wherein it relied upon its opinion that accompanied the custody order in addressing Mother's alleged errors. **See** Trial Court Opinion, 1/13/15, at 3.

Mother raises ten issues for our review, which we have reordered for purpose of disposition.

> [1]. Whether the [t]rial [c]ourt committed an [e]rror of law and [a]buse of [d]iscretion in issuing the Order entered on November 20, 2014, as it failed to appropriately analyze and apply the [f]actors identified in 23 Pa.C.S.A. § 5328, in light of the facts and evidence of [r]ecord elicited at [t]rial in this matter[?]
>
> [2]. Whether the [t]rial [c]ourt committed an [e]rror of law and [a]buse of [d]iscretion in issuing the Order entered on November 20, 2014, as it failed to award Mother [p]rimary [p]hysical [c]ustody of [S.J.S.]. The facts and evidence of [r]ecord elicited

---

[1] We note that § 5322 of the Child Custody Act ("the Act"), 23 Pa.C.S. § 5321-5340, does not provide for an award of joint legal custody. Rather, the Act provides for "sole legal custody" and "shared legal custody." In this case, the trial court's award reflects shared legal custody between the parties.

at [t]rial support an award of [p]rimary [p]hysical [c]ustody to Mother, when considering the same in light of the [f]actors identified in 23 Pa.C.S.A. § 5328[?]

[3]. Whether the [t]rial [c]ourt committed an [e]rror of law and [a]buse of [d]iscretion in issuing the Order entered on November 20, 2014, as the facts and evidence of [r]ecord elicited at [t]rial in this matter demonstrate that Mother is more likely than Father to encourage frequent and continuing contact between [S.J.S.] and the other [p]arent, and this factor should weigh heavily in favor of Mother[?]

[4]. Whether the [t]rial [c]ourt committed an [e]rror of law and [a]buse of [d]iscretion in issuing the Order entered on November 20, 2014, as the facts and evidence of [r]ecord elicited at [t]rial in this matter demonstrate that Mother performed more of the [p]arental [d]uties on behalf of [S.J.S.] than Father, and that this factor should weigh more heavily in favor of Mother[?]

[5]. Whether the [t]rial [c]ourt committed an [e]rror of law and [a]buse of [d]iscretion in issuing the Order entered on November 20, 2014, as the facts and evidence of [r]ecord elicited at [t]rial in this matter demonstrate that Mother has more extended family available than Father, and this factor should weigh heavily in favor of Mother[?]

[6]. Whether the [t]rial [c]ourt committed an [e]rror of law and [a]buse of [d]iscretion in issuing the Order entered on November 20, 2014, as the facts and evidence of [r]ecord elicited at [t]rial in this matter demonstrate that Mother is more available than Father to care for [S.J.S.] and make appropriate [c]hild [c]are arrangements, and that [ ] Mother is more likely than Father to maintain a loving, stable, consistent and nurturing relationship with [S.J.S.], therefore demonstrating that these factors should weigh heavily in favor of Mother[?]

[7]. Whether the [t]rial [c]ourt committed an [e]rror of law and [a]buse of [d]iscretion in issuing the Order entered on November 20, 2014, as the facts and evidence of [r]ecord elicited at [t]rial in this matter demonstrate that the level of conflict between the [p]arties and the willingness of the [p]arties to cooperate with

3

one another, and this factor should weigh heavily in favor of Mother[?]

[8]. Whether the [t]rial [c]ourt committed an [e]rror of law and [a]buse of [d]iscretion in issuing the Order entered on November 20, 2014, as it imposed an unrealistic and unreasonable Custody Schedule, in light of Mother's work schedule and evidence of [r]ecord elicited at [t]rial in this matter[?]

[9]. Whether the [t]rial [c]ourt committed an [e]rror of law and [a]buse of [d]iscretion in issuing the Order entered on November 20, 2014, as it failed to direct that the [p]arties' respective two (2) weeks of [v]acation with [S.J.S.] be only non-consecutive. The best interest and permanent welfare of [S.J.S.] requires that the [p]arties' weeks of [v]acation be non-consecutive so that neither [p]arty is deprived of [c]ustodial [t]ime with [S.J.S.] for several weeks at a time[?]

[10]. Whether the [t]rial [c]ourt committed an [e]rror of law and [a]buse of [d]iscretion in issuing the Order entered on November 20, 2014, as it failed to direct the [p]arties to select a single [p]rimary [c]are [p]hysician for [S.J.S.]. The best interest and permanent welfare of [S.J.S.] requires that [S.J.S.] have continuity of care with a single [p]hysician for care, immunizations, well visits, etc., namely CHOP in Doylestown, which is [S.J.S.]'s current [p]hysician[?]

Mother's brief at 4-6.

The scope and standard of review in custody matters is as follows.

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the

4

trial court's factual findings; and thus, represent a gross abuse of discretion.

***R.M.G., Jr. v. F.M.G.***, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting ***Bovard v. Baker***, 2001 PA Super 126, 775 A.2d 835, 838 (Pa.Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***R.M.G., Jr., supra*** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. ***Ketterer v. Seifert***, 2006 PA Super 144, 902 A.2d 533, 539 (Pa.Super. 2006).

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa.Super. 2014).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer***, 902 A.2d at 540 (*quoting* ***Jackson v. Beck***, 858 A.2d 1250, 1254

(Pa.Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa.Super. 2006), *citing* **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa.Super. 2004).

When awarding any form of custody, the Act provides an enumerated list of factors a trial court must consider in determining the best interests of a child:

**§ 5328. Factors to consider when awarding custody.**

**(a)** *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

This Court has stated that, "**[a]ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). Further,

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

**A.V.**, 87 A.3d at 823. Mindful of these standards, we turn to the merits of this appeal.[2]

In Mother's first seven issues on appeal, she argues that the trial court committed an error of law and abused its discretion in failing to grant her primary physical custody. Specifically, Mother argues that the record evidence does not support the court's findings and/or the weight it placed upon § 5328(a)(1), (3), (5), (9), (12), and (13). We disagree.

With respect to § 5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the child and another

---

[2] In this case, the court considered all of the custody factors except § 5328(a)(2.1) in its opinion accompanying the subject order. **See** Trial Court Opinion, 11/20/14, at 14-24. Based on the record evidence, we conclude that the court's omission is harmless.

party, the trial court weighed this factor in favor of Father. The court recognized "Father's immaturity surrounding the custody exchanges and refusal to return custody at an agreed-upon date." Trial Court Opinion, 11/20/14, at 17. Nevertheless, the court concluded that Father recognizes the importance of the mother-child relationship for S.J.S., while Mother has "a less-committed attitude" toward the importance of the father-child relationship for S.J.S. *Id*. With respect to Mother, the court found that she

> kept [S.J.S.] for up to twelve days at a time after the separation, wanted to decrease Father's Fourth of July Holiday with [S.J.S.], and did not agree to Father's proposed vacation with [S.J.S.] at the end of July. Mother believes that [S.J.S.] needs to form a strong relationship with the Maternal Grandparents, and that the Maternal Grandparents should care for [S.J.S.] while she is working, but Mother does not consider that [S.J.S.] needs to form a strong relationship with her Father or Paternal Grandmother.

*Id*. The testimonial evidence supports the court's findings as follows.

Martricia McLaughlin, who performed a home evaluation for Father, testified that, during her interview with Father, he spoke about positive qualities that Mother could potentially teach S.J.S., including social skills and "how to get along in the world." N.T., 10/9/14, at 15. Ms. McLaughlin testified that, in her opinion, Father "understood there's something between a mother and a daughter that a father and a daughter wouldn't necessarily be able to share." *Id*. at 16. She further explained that, Father "attempted

9

to provide a balanced view of what each parent could give if they were to both be a full part in the child's life." *Id*. at 26.

Mother testified as follows on cross-examination regarding her request for primary physical custody and whether Father should have custody of S.J.S. while she is at work:

> Q.  . . . [A]nd you would rather, when you're at work, have a family member of your own with [S.J.S.] than her father?
>
> A. I would rather her be . . . able to enjoy time with her grandparents and be with family members.  I also -- there's a lot of activities that take place . . . when she's with me or my family members that I have not -- that [do not] occur on [Father]'s side. . . .
>
>       . . . .
>
> Q. Even if [Father] told you that he would be available for her and would not leave the home, you would still rather . . . your child be with your mother or your father. . . .?
>
> A.  . . . I believe that primary custody is best with me and I don't think that [Father] is alone with her the whole time as has been proven that his mother . . . sleeps there during the week.  I don't need help and I feel I see value in a child having relationships with their grandparents and I also have the flexibility of taking a lot of time off from work. . . .

N.T., 10/9/14, at 148-150.  Based on the foregoing testimonial evidence, we discern no abuse of discretion by the trial court in weighing § 5328(a)(1) in favor of Father.

With respect to § 5328(a)(3), the parental duties performed by each party on behalf of the child, the trial court weighed this factor in favor of

Mother. To the extent Mother asserts that the court should have given this factor "weighted consideration," particularly because she has been S.J.S.'s primary caregiver, the Act specifies that the court should give "weighted consideration" only to those factors that "affect the safety of the child." 23 Pa.C.S. § 5328(a). Mother does not allege, and nor does our review of the record reveal, that the court's shared physical custody award presents any danger to S.J.S. Further, this Court is unable to "dictate the amount of weight the trial court places on evidence." *A.V.*, *supra* at 820 (citation omitted). As such, we will not disturb the custody order due to the fact that the court declined to assess additional weight to its consideration of § 5328(a)(3) for Mother's benefit.

With respect to § 5328(a)(5), the availability of extended family, the court found that this factor does not weigh in favor of either party because Mother and Father both have extended family living nearby. Mother argues the court should have weighed this factor in her favor because "Father does not enjoy the benefit of a close-knit family." Mother's brief at 18. We conclude that Mother's argument merits no relief when the record reveals that Father and his mother live a distance apart of one-half mile, and they share a close relationship. N.T., 10/8/14, at 172. In addition, Father presented the testimony of his two aunts and three cousins who testified with respect to their relationship with Father. *Id*. at 114-155.

In her brief, Mother relates her arguments with respect to § 5328(a)(9), which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's needs, and § 5328(a)(12), each party's availability to care for the child or ability to make appropriate child-care arrangements. The court found these factors neutral between the parties. Mother argues, however, that "she is more available than Father to care for [S.J.S.] and make appropriate [c]hild [c]are arrangements." Mother's brief at 19. It follows, Mother argues, that she is more likely to maintain a loving, stable, consistent, and nurturing relationship with S.J.S.

> The court found as follows regarding § 5328(a)(12):
>
> Father has testified that he has more time than Mother to care for [S.J.S.] because he is self-employed and sets his own hours. However, while the parties were together, the same employment caused Father to be out of the home throughout the day. Even if Father's self-employment did require him to be out of the home throughout the day, the evidence suggests that Father would have suitable child care arrangements through Paternal Grandmother. Mother is employed outside of the home, five days per week. However, when Mother works, she has made suitable child care arrangements with various members of her family. Thus, this factor is essentially neutral as between Mother and Father.

Trial Court Opinion, 11/20/14, at 21. The testimonial evidence overwhelmingly supports the court's findings, and the court's conclusion that § 5328(a)(12) is neutral between the parties is reasonable in light of those findings.

Likewise, the evidence supports the court's findings with respect to § 5328(a)(9), that Mother and Father are both "committed to providing [S.J.S.] with a nurturing home and a large family network. Father is goal-directed and envisions the type of life he wants to provide for [S.J.S.], and Mother is able to intuit [S.J.S.]'s needs. Both parties appear to have stable careers and stable home lives." *Id*. at 20. As such, we will not disturb the custody order on the basis of the court's findings related to § 5328(a)(9) and (12).

With respect to § 5328(a)(13), the level of conflict between the parties and the willingness of the parties to cooperate with one another, the trial court found as follows:

> The level of conflict in this case is significant. Both Mother and Father believe that the other party is uncooperative and unreasonable. There is a high level of tension at each custody exchange because Father has determined that he will only talk about certain subjects, and Mother will not relinquish custody until she obtains answers to her questions regarding [S.J.S.]. The strained relationship between Mother and Paternal Grandmother has increased the conflict in this case, as evidenced by Paternal Grandmother clapping her hands and singing "Oh Happy Day" when Mother retrieved her belongings from the marital home. Additionally, Father's contempt for Mother's attorney appears to have increased the conflict in this case.

> As a general matter, high-conflict cases are not well-suited for shared physical custody, which requires a higher degree of cooperation than a traditional arrangement in which one parent has primary physical custody and the other parent has partial physical custody. However, in this case we believe the level of conflict between Mother and Father is significantly increased

13

because of the presence of third parties. Father has indicated that he would be more cooperative and willing to co-parent once a final custody order is entered and the parties no longer communicated through lawyers. We find that there is sufficient evidence of cooperation between the parties that, with the direction from the court, they may be able to overcome their differences and build an effective working relationship. It is critical to [S.J.S.]'s best interests that we attempt to craft a custody order that fosters such a relationship rather than simply resorting to a choice of one party over the other in order to avoid conflict.

*Id*. at 22-23.

In contrast to the court's findings, Mother argues that, "Father has demonstrated an inability to cooperate, communicate and sufficiently co-parent with Mother which is necessary to support an award of [s]hared [p]hysical [c]ustody under [*In re*] *Wesley J. K.*, [445 A.2d 1243 (Pa.Super. 1982)]." Mother's brief at 26. In *Wesley*, this Court held that, in determining whether to award shared custody, the trial court must consider whether the following factors are present:

1) both parents are "fit," 2) both desire continuing involvement with their child, 3) both parents are seen by the child as sources of security and love, and 4) both parents are able to communicate and cooperate in promoting the child's best interests.

*Wesley*, 445 A.2d at 1249; *see also R.S. v. T.T.*, 113 A.3d 1254, 1260 (Pa.Super. 2015) (same). With respect to the ability of the parents to communicate and cooperate in promoting the child's best interest, we stated:

14

> This feature does not translate into a requirement that the parents have an amicable relationship. Although such a positive relationship is preferable, a successful joint custody arrangement requires only that the parents be able to isolate their personal conflicts from their roles as parents and that the children be spared whatever resentments and rancor the parents may harbor.

*Id*.

In this case, upon careful review of the record evidence, we discern no abuse of discretion by the trial court in finding that "there is sufficient evidence of cooperation between the parties that, with the direction from the court, they may be able to overcome their differences and build an effective working relationship." Trial Court Opinion, 11/20/14, at 23. To the extent the court's decision is based on Father's testimony that he would be more cooperative once a final custody order is entered, we will not disturb it. *See A.V.*, 87 A.3d at 820 (citation omitted) (stating that, "on issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses"). In addition, we discern as reasonable the court's decision to "craft a custody order that fosters [a working relationship between Mother and Father] rather than simply resorting to a choice of one party over the other in order to avoid conflict." Trial Court Opinion, 11/20/14, at 23. Because the trial court's consideration of the best interest of S.J.S. was careful and thorough, and we are unable to find any abuse of discretion, Mother's first seven issues on appeal fail.

In her eighth issue, Mother argues that the trial court erred in imposing an unrealistic and unreasonable custody schedule. The focus of Mother's challenge is the time and location of the Sunday custody exchanges. She argues that the provision is unworkable in light of her work schedule because her shift does not end until 6:00 pm. Mother highlights that she "must travel from her place [of] employment in Perkasie, to her residence in Doylestown, and then to Quakertown for the [c]ustodial [e]xchange [all within one-half hour]." Mother's brief at 12. Although Mother alleged this error in her concise statement, the trial court did not address it in its Rule 1925(a) opinion.

The relevant provision of the custody order provides:

3. **Transportation.** Both parties shall provide transportation for the custody exchanges. The place of custody exchanges can be set as the parties may agree. If the parties cannot agree, all custody exchanges shall take place at the Giant Supermarket in Quakertown.

Custody Order, 11/20/14, at ¶ 3.

On its face, the custody order encourages flexibility in the location of the custody transfers. Thus, while we recognize that this aspect of the custody schedule imposes a significant inconvenience on Mother, we reject her contention that the isolated scheduling conflict is tantamount to legal error. Indeed, assuming both that the parties cannot mutually agree to alter the time or location of the custody exchange and that Mother is unable to

16

either modify her work schedule on Sundays or recruit a family member to transport her daughter to the custody exchanges on those days, this isolated issue should be raised before the trial court in a motion to modify the custody order. ***See Nancy E.M. v. Kenneth D.M.***, 462 A.2d 1386, 1389 (Pa.Super. 1983) (stating that, "the particulars of a visitation schedule is a matter left to the discretion of the trial court").

The trial court opinion also neglected to address the ninth error Mother alleges on appeal regarding the provision in the custody order that grants each parent two weeks of vacation with S.J.S. per year. Mother contends that the court erred and abused its discretion in failing to direct that the two weeks of vacation should be scheduled non-consecutively. Specifically, Mother contends that, "the best interest and permanent welfare of [S.J.S.] requires that that [p]arties' weeks of [v]acation be non-consecutive only so that neither [p]arty is deprived of [c]ustodial [t]ime with [S.J.S.] for several weeks at a time." Mother's brief at 27.

The relevant provision provides:

13. **Vacation.** Each party shall have two weeks of uninterrupted vacation with the Child per year, either consecutive or nonconsecutive at that party's option. Such vacation shall not occur on Mother's Day, Father's Day, Thanksgiving, Christmas, or the Child's birthday. The party seeking vacation shall provide the other party with thirty days' notice. The party taking vacation shall provide the other party with an itinerary and contact information prior to departure.

Order, 11/20/14, at ¶ 13.

In essence, Mother asserts that, considering S.J.S.'s tender age and the status *quo* of the weekly custody arrangement, granting either parent two weeks of uninterrupted vacation per year is not in the child's best interest. We acknowledge Mother's concern over a custody scheme that permits a then-ten-month-old toddler to be separated from an involved parent for an extended period of time. Without more, a two-week period of separation from a parent is not alarming by itself; however, the effects of the separation will be amplified when the two-week vacations are scheduled to follow the vacationing parent's customary period of physical custody. In those situations, S.J.S. will be deprived of the non-custodial parent for three-fourths of a month. That arrangement is potentially problematic in light of the child's age and the parties' demonstrated lack of communication.

Nevertheless, we find that the trial court's express decision to grant both parents the flexibility to enjoy two-nonconsecutive weeks of vacation with his or her daughter is not legal error absent some clear revelation of possible harm. As noted, we are not deaf to Mother's apprehension. However, mindful of our deferential standard of review in custody matters generally and both parents' ability to petition the trial court to modify the vacation arrangement if it is unwieldy in application or susceptible to abuse, we have no basis to disturb the custody order.

In her final issue, Mother argues that the trial court abused its discretion in failing to direct the parties to select a single primary care physician for S.J.S. Specifically, Mother argues that the following provision of the order is unreasonable:

> 8. **Medical Providers.** Neither party shall interfere with the other party's reasonable efforts to seek advice or opinions from a current or prospective medical provider for the Child. Both parties shall have the right to participate in all appointments or calls with one of the Child's current or prospective medical providers.

Custody Order, 11/20/14, at ¶ 8.

Mother does not indicate that she raised this claim before the trial court, and our independent review of the certified record does not reveal that Mother presented this issue or asserted that Father managed S.J.S's medical care without her input. To the contrary, the record establishes that Mother unilaterally changed S.J.S.'s pediatrician even though Father disagreed with the decision and requested that she delay it. *See* N.T., 10/8/14, at 32. It is axiomatic that claims that were not raised in the trial court may not be raised for the first time on appeal. *See Jahanshahi v. Centura Development Co., Inc.*, 816 A.2d 1179, 1189 (Pa. Super. 2003); Pa.R.A.P. 302(a). Thus, we conclude that Mother has not preserved this issue for appellate review. Moreover, we observe that Mother failed to develop her argument or cite any law in support of this issue. *See Glynn v. Glynn*, 789 A.2d 242 (Pa.Super. 2001) (holding appellant waived an issue

19

where he failed to develop it in argument and failed to cite any legal authority to support his claim). Accordingly, we do not address the merits of this claim.

For all of the foregoing reasons, we affirm the final custody order awarding Mother and Father shared legal and physical custody of their daughter on an alternating weekly basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2015