J-S82015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.J.C., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| B.L.B., | |
| Appellant | No. 642 WDA 2017 |

Appeal from the Order Entered March 27, 2017
In the Court of Common Pleas of Elk County
Civil Division at No(s): 2015-359

BEFORE:  BENDER, P.J.E., STEVENS, P.J.E.[*], and STRASSBURGER, J.[**]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MARCH 6, 2018**

B.L.B. ("Mother") appeals from the order dated March 20, 2017, and entered March 27, 2017, wherein the trial court found Mother in contempt of a prior custody order dated June 27, 2016.  We affirm.

Mother and M.J.C. ("Father") are the parents of G.M.C. ("Child"), born in February of 2015.  Mother's last known residence was in Midway, Pennsylvania,[1] and Father resides in St. Mary's, Pennsylvania.  The initial custody order, dated June 27, 2016, granted legal custody, as well as primary physical custody of Child, to Mother and partial custody for purposes

---

[*] Former Justice specially assigned to the Superior Court.
[**] Retired Senior Judge assigned to the Superior Court.

[1] The record indicates that Mother's current address is confidential due to a Protection from Abuse Order ("PFA") entered in the Court of Common Pleas of Elk County at docket no. 2015-368.

of visitation to Father. The custody order contains a step-up mechanism for Father to eventually have unsupervised visits.[2] Additionally, the order required Father to complete anger management classes, parenting classes, and counseling, and to submit a report from the relevant providers, prior to moving to unsupervised visitation. *See* Custody Order, 6/27/16, at 1-2.

On February 8, 2017, Father filed a petition for civil contempt, alleging that Mother was in violation of the custody order for "failure to proceed in moving forward with unsupervised [visitation]." Petition for Civil Contempt, 2/8/17, at 1. After both parties testified at the contempt hearing, the trial court found that Mother had refused to permit unsupervised visits despite Father's completion of all the prerequisites outlined in the Custody Order. TCO at 1. Accordingly, the trial court held that Mother was in civil contempt of court. *Id.*

_____

[2] As explained by the trial court,

> Father initially was to have periods of custody on three alternate Saturdays, from 9:00 a.m. until 5:00 p.m., to be supervised by his mother, Katherine Tornatore. Thereafter, for three additional supervised visits, every other week, Father's periods of partial custody would expand to include Saturday from 9:00 a.m. to 5:00 p.m. and Sunday from 9:00 a.m. to 5:00 p.m. After this second three-visit cycle, Father automatically was to begin having unsupervised visits every other weekend on Saturday and Sunday, from 9:00 a.m. to 5:00 p.m. each day. After three such visits, Father then was to have unsupervised overnight visits every other weekend from Saturday at 9:00 a.m. until Sunday at 5:00 p.m.

Trial Court Opinion ("TCO"), 6/20/17, at 5-6.

On April 25, 2017, Mother appealed from the March 27, 2017 order holding her in contempt ("Contempt Order") and, subsequently, she filed a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Mother now presents this sole issue for our review: "Whether the trial court abused its discretion or erred as a matter of law in finding [Mother] in contempt, as [she] did not violate any provision of the court order?" Mother's Brief at 6.

First, we must determine the appealability of the Contempt Order. The trial court suggests that the order is interlocutory and, thus, Mother's appeal should be quashed. TCO at 2-3. We have clearly stated, however, that "[a]n order finding a party in contempt for failure to comply with a prior order of court is final and appealable if sanctions are imposed." *Glynn v. Glynn*, 789 A.2d 242, 246 (Pa. Super. 2001). In the instant matter, the trial court imposed a six-month term of incarceration as a sanction for Mother's contempt of the prior Custody Order; thus, the Contempt Order appears to be final and appealable.

We further note that the sanctions imposed by the court were conditioned as follows: "[Mother] may purge herself of this contempt and thereby do[] away with the necessity of serving any portion of the jail term hereby imposed as follows:

> 1) [Mother] shall fully abide by the terms of the Custody Order dated June 27, 2016, through September 30, 2017."

*See* Contempt Order. "When a contempt order that imposes sanctions also contains a purge condition, the purge condition does not transform a final, appealable order into one that is interlocutory." ***Glynn***, 789 A.2d at 247. As explained by the ***Glynn*** Court:

> If that were so, a contemnor in a civil contempt action would not be able to appeal the contempt order until he/she was incarcerated or had paid sums owing as sanctions for contempt. It seems inappropriate and unnecessarily harsh for a contemnor in a civil contempt action to undergo incarceration or fulfill another sanction before this Court will accept an appeal of a contempt order. Rather, we conclude that, for a contempt order to be properly appealable, it is only necessary that the order impose sanctions on the contemnor and that no further court order be required before the sanctions take effect.

***Id.*** at 247-48.

Here, the trial court contends that the sanctions essentially cannot be imposed without a further court hearing to prove that Mother violated the terms of the custody order and, hence, it maintains that the contempt order should be deemed interlocutory. TCO at 2-3. We disagree with the trial court's conclusion. On its face, the Contempt Order does not require any further court intervention before sanctions can take effect. In fact, the order expressly states that the term of incarceration commences "on Monday, October 2, 2019, at 9:00 a.m.," and directs Mother to report to the Warden of the Elk County Jail at such time. The Contempt Order only mentions the

possibility of a further petition, notice and hearing in the event that Mother

does not abide by the purge conditions and fails to report to the jail.[3]

We now address the merits of this appeal.[4]  "When considering an

appeal from an [o]rder holding a party in contempt for failure to comply with

a court [o]rder, our scope of review is narrow:  we will reverse only upon a

showing the court abused its discretion."  *Harcar v. Harcar*, 982 A.2d 1230,

1234 (Pa. Super. 2009) (quoting *Hopkins v. Byes*, 954 A.2d 654, 655-56

(Pa. Super. 2008)).  Additionally, we must consider that:

> Each court is the exclusive judge of contempts against its process.  The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute.  When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge.

*Habjan v. Habjan*, 73 A.3d 630, 637 (Pa. Super. 2013) (quoting

*Langendorfer v. Spearman*, 797 A.2d 303, 307 (Pa. Super. 2002)).  "The

_____

[3] "If Respondent fails to report to the jail as required, a bench warrant will be issued for her arrest and incarceration after petition, notice and hearing." Contempt Order at 1.

[4] Father argues that, "[i]n light of the fact the time period for the contempt has expired, and the fact sanctions were not imposed, the [a]ppeal by [Mother] is moot and should be dismissed."  Father's Brief at 13.  To the contrary, we do not regard this appeal as moot, since Mother remains subject to the underlying custody order and a failure to comply with the order may again subject her to contempt proceedings.  *See Barrett v. Barrett*, 368 A.2d 616, 619 n.1 (Pa. 1977).  *See also Griffin v. Griffin*, 558 A.2d 86, 89 (Pa. Super. 1989) (rejecting the argument that the appeal from a contempt order in a support case is moot, because the husband remains subject to a continuing support order and a second failure to comply with the order would again subject him to contempt proceedings).

court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." **Id.** (quoting **Godfrey v. Godfrey**, 894 A.2d 776, 780 (Pa. Super. 2006)).

The general rule in proceedings for civil contempt is that "the burden of proof rests with the complaining party to demonstrate, by a preponderance of the evidence, that the defendant is in noncompliance with a court order." **Id.** (quoting **Lachat v. Hinchcliffe**, 769 A.2d 481, 488 (Pa. Super. 2001)).

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

**Id.** (quoting **Stahl v. Redcay**, 897 A.2d 478, 489 (Pa. Super. 2006)).

Here, the situation which gave rise to the petition for contempt involved Mother's failure to cooperate with Father's court-ordered visitation rights. Under the terms of the Custody Order, Father had the right to unsupervised visitation with Child beginning in September of 2016, provided that he met all of the requirements set forth by the court. On February 4, 2017, Father produced documentation to Mother evidencing the completion of his obligations under the custody order.[5] In response, Mother sent a

_____

[5] As a result of the existing PFA, Ms. Tornatore was the agreed upon go-between for the parties. Ms. Tornatore delivered an envelope to Mother

*(Footnote Continued Next Page)*

message to Ms. Tornatore stating that she was not approving "starting unsupervised visitation," and that "visits are to continue to be supervised." Mother's Brief at 15-16 (citation to record omitted). Ms. Tornatore responded to Mother's message three days later, simply stating, "Ok." *Id.* at 16. The following day, Father filed the petition for contempt, which alleged that Mother was in contempt of the Custody Order by failing to allow Father to proceed with unsupervised visitation. *Id.* Mother argues, however, that she cannot be held in contempt of court, as she believes she did not violate the Custody Order. Mother asserts that she had no independent control over Father's visits being supervised or unsupervised and that she did not withhold Child from Father or otherwise interfere with his time with Child. *Id.* at 17. After careful review of the record, we deem Mother's claim meritless.

As demonstrated by the following, the trial court found all of the requisite elements of civil contempt present in the instant matter:

> First, and importantly, although Mother's counsel raised the issue in cross-examination, nowhere in the record did Mother indicate that her reason for refusing to permit unsupervised visitation was Father's failure to complete the requisite counseling and classes by the dates identified in the Order. The [c]ourt found that these dates were not of the essence of Father's compliance, particularly because of the short time span in which the requirements were to be completed. Mother repeatedly emphasized at the hearing that her reason for

*(Footnote Continued)* ————————

containing the documentation showing that Father had met the court-ordered prerequisites to unsupervised visitation.

refusing unsupervised visits was an incident that occurred at a custody exchange approximately two weeks prior to Father's completion of his counseling and coursework.[2]  Second, Mother does not dispute the fact that Father completed the necessary requirements for unsupervised visits and provided her with the paperwork confirming the same by February 4, 2017.  She also was served with the petition for contempt outlining Father's assertions that she had violated the [Custody] Order by refusing to permit unsupervised visits, and she continued to refuse thereafter.  That constitutes a violation of the Custody Order.

> [2] The incident involved what apparently was a heated exchange between Father and the person whom Mother had sent to pick up the Child at a custody exchange, Sandra Levenduski.  The record is not altogether clear as to what happened, but Father clearly was angry and yelled at Ms. Levanduski because he did not believe she, instead of Mother, should be performing the custody exchange.

> Third, the [c]ourt also finds that Mother's actions were volitional and done with wrongful intent.  Her refusal was not by accident, happenstance, or circumstances beyond her control.  Although the underlying reason or justification for the refusal might be reasonable at first glance, the plausibility of Mother's fears, on which the [c]ourt renders no opinion, cannot justify an intentional disregard for provisions in a custody order that was drafted, at least in part if not in the whole, by Mother and her counsel.  The Order clearly provides for automatic progression to unsupervised visitation and provides Mother with a reasonable and expeditious remedy if she has any issues with that progression.[6]   The [c]ourt finds that she consciously disregarded the [Custody] Order in violation of both its letter and spirit, which violation was volitional and intentional.

TCO at 7-9 (citations to record omitted).  "[T]his Court defers to the

credibility determinations of the trial court with regard to the witnesses who

---

[6] The final paragraph of the Custody Order expressly grants Mother the right to file a motion seeking to limit or suspend the extension of Father's visits if she believes they are harmful, to be heard immediately by the conference officer.  TCO at 6; **see also** Custody Order at 3.

appeared before it, as that court had the opportunity to observe their demeanor." **Harcar**, 982 A.2d at 1236. Under the circumstances here, we cannot conclude that the trial court abused its discretion. The record contained more than sufficient evidence to support the trial court's ruling.

Accordingly, we hold that the court properly found Mother in civil contempt of the Custody Order, and we affirm the March 27, 2017 order.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/6/2018